## CHAMPS, Appellant v. STONE, Appellee.

Court of Appeals, First District, Hamilton County.

No. 6379. Decided March 27, 1944.

492

Mr. Louis R. Schear, Cincinnati, for appellant.
Mr. Walter W. Harris, Cincinnati, for appellee.

## OPINION

By ROSS, P. J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, in favor of the defendant, entered upon a verdict which such Court instructed after the opening statement of counsel for plaintiff and his stipulation as to what his evidence would show.

"MR. SCHEAR: If the court please and ladies and gentlemen of the jury, the action here is one for personal injuries. We make in our case no claim of any damages that resulted as a loss of time. Our action, as I stated to you before, is one based upon a so-called malpractice action, a case of a patient against a physician.

"Our case sets forth that the defendant in the case represented himself as a duly qualified physician in this vicinity by signs and other means, and that the plaintiff as a patient accepted the invitation extended to the public by the defendant, the doctor in the case, and called upon him for treatment.

"And that this was somewhat around the latter part of 1941 or the early part of 1942, and that a treatment was administered with a needle, that is, I refer to it as a needle, the needle the doctor or physicians use. That at that time the defendant doctor advised the plaintiff that ·it was necessary to return to take a series of injections, constituting a series of ten injections. That at that time the plaintiff in this case was contemplating, or it was around the time he was to be married, or was married. The evidence will disclose that his purpose of the call was originally for the blood test and that the doctor advised him it was necessary to follow through with a series of injections.

"I believe the evidence will show to you ladies and gentlemen of the jury that the plaintiff did return to the doctor; that the doctor was so grossly intoxicated and under the influence of alcohol that the could (not) comprehend to carry through a proper treatment. In other words, he was physically unfit to administer any aid to a patient.

"I believe the evidence, ladies and gentlemen, will show you that the plaintiff protested about the doctor going forward, but nevertheless, he did go forward and he was unable to make a proper injection, and that he did inject the needle into the skin and flesh and that blood then came profusely from the arm of the plaintiff and that a swelling and a growth continued upon his right arm where the needle was inserted just about between the hand and the forearm, and that growth was quite large in size; that it lasted for some period of time and that thereafter the plaintiff returned to the defendant and that the defendant advised him that he could do nothing for him, and that thereafter the plaintiff was treated by another physician, and that still later another physician treated him."

It is also stated in the bill of exceptions:

"That is what we are here for today and asking you ladies and gentlemen to determine.

"MR. HARRIS: If the court please, I move for judgment on the opening statement of counsel.

(Thereupon the jury was excused from the court room and counsel for plaintiff and counsel for defendant argued the motion to the court, after which the jury was returned to the court room and resumed their seats in the jury box, and the following proceedings were had:)

"THE COURT: Ladies and Gentlemen of the Jury, this is going to be a very short case and you are going to have nothing to do. Some of you were before me yesterday and I said I hoped the next time you were before me you would have to do the work and I would not have it all to do.

"It is agreed in this case as follows: That the plaintiff went to the defendant for the purpose of having a blood test made by the defendant physician; that the defendant at said time was grossly intoxicated; that the plaintiff saw that the defendant was grossly intoxicated and refused to be treated by him; that the defendant insisted upon treating the plaintiff and the plaintiff submitted to being treated by him, and that the plaintiff claims that as a result of the treatment, which was improper and not according to what an ordinary physician—that by reason of not exercising the skill a physician should exercise he was damaged.

"MR. HARRIS: We agree that would be the plaintiff's testimony.

"THE COURT: Yes, of course.

"On the opening statement, the defendant moves for a directed verdict and I grant that motion on the ground that if I myself take the chance of being treated by someone whom I ought not take the chance of being treated by. In other words, if I go to a doctor who is drunk and I know he is drunk and let him treat me because he insists on treatment (treating) me I take the consequences thereof and that is my own fault, in plain language, and I am guilty of negligence in law which contributes to a proximate cause of an injury. That is the reason why I direct you all to sign the verdict * * *"

The questions presented here are, whether such conduct on the part of the plaintiff constituted contributory negligence as a matter of law, or an assumption of the risk presented by the physician's condition.

Contributory negligence is such an act or omission on the part of the plaintiff, constituting a failure to exercise the care which ordinarily prudent persons are accustomed to employ for their own safety, which, concurring or cooperating with the negligent act of the defendant is a proximate cause or occasion of the injury of which the plaintiff complains. 29 O. Jur., 527.

Paragraph 2 of the syllabus to the case of **Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Lee, Admr., 111 Oh St., 391,** is:

"In an action involving the negligence of the defendant and contributory negligence of the plaintiff when, giving to every portion of the plaintiff's evidence the most favorable interpretation in favor of the absence of negligence on his part, such evidence under such interpretation is susceptible of no other reasonable inference than that of negligence on his part, directly contributing to his injury, the question of contributory negligence ceases to be a question of fact for the determination of the jury, but, for the purposes of the case, becomes an uncontroverted fact for a declaration by the court of the law applicable thereto. It is the duty of the court in such case to direct a verdict."

It is not contended by plaintiff that the defendant physically overpowered him, although it is apparent that the defendant over-persuaded plaintiff to submit to treatment.

It is claimed the intoxicated condition of defendant was the proximate cause of plaintiff's injuries. Such condition was apparent to plaintiff before he permitted the defendant to inject the needle in his arm. Had the plaintiff the right to rely upon the skill of defendant when grossly intoxicated? Plaintiff must have concluded that, although defendant was in such condition, he could still administer treatment without harmful results to him. Could reasonable minds differ on the conclusion that reasonably prudent persons would not permit a physician to act under such circumstances?

It would seem that any reasonable person would naturally ask—why did you let the physician proceed? Why did you not at once leave his office? You certainly saw he was in no condition to use a needle upon you. It must have been apparent to any reasonable person that the physician in such a condition might even select the wrong drug, or inject an overdose. The 4th paragraph of the syllabus to the case of New York Central Rd. Co. v. Stevens, Admr., 126 Oh St., 395, is:

"In an action for damages for personal injuries, where plaintiff's own testimony will warrant no inference but that his own want of due care contributed proximately to causing the injury, there can be no recovery, and a motion directing the jury to return a verdict for the defendant should be sustained."

The only possible argument against conclusions that plaintiff was either guilty of contributory negligence or assumed the

risk of the physcian's evident incapacity to properly perform his duties is that, under any such circumstances a patient has the right to rely upon the professional representation of ability contained in the fact that the physician holds himself out as such and insists upon his ability to properly practice his profession.

Such implied ability and even definitely professed ability certainly may not be accepted by a patient in the presence of "gross intoxication", of which plaintiff is fully aware. Ordinary care for one's safety would impel the ordinarily careful and prudent person to seriously doubt the physician's ability and cause the patient to refuse treatment.

The judgment of the trial court is affirmed.

HILDEBRANT, J., concurs.
MATTHEWS, J., dissents in separate memorandum.

MATTHEWS, J. (Dissenting):
Manifestly, the plaintiff concluded that the defendant was not so drunk as to preclude him from safely performing the injection by means of a hypodermic needle. The defendant, by holding himself out as a physician, represented that he had the required training and skill, and at the time of this treatment he represented that he was in such physical and mental condition as to enable him to apply his training and skill. He occupied the dominant position in relation of trust and confidence. I do not think we are justified in holding that the patient is negligent as a matter of law in relying on the physician's assurance that he is in condition to safely use a hypodermic needle.

It is my opinion that the opening statement of counsel was a sufficient statement of a cause for submission to the jury and that the Court erred in instructing a verdict for the defendant upon such statement.