286 N.J. Super. 362 (1996)
669 A.2d 286
CLINTON BRYANT AND PRISCILLA BRYANT, PLAINTIFFS-RESPONDENTS,
v.
CHARLES CALANTONE, D.D.S., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1995.
Decided January 16, 1996.
*364 Before HAVEY, D'ANNUNZIO and BRAITHWAITE, JJ.
Jane S. Kelsey argued the cause for appellant (Reiseman & Sharp attorneys; Ms. Kelsey on the brief).
Dennis J. Drasco argued the cause for respondents (Lum, Danzis, Drasco, Positan & Kleinberg attorneys; Mr. Drasco, Lisa A. Firko, Kevin J. O'Connor and Patricia A. Ryan on the brief).
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
In this dental malpractice case, defendant appeals from a judgment entered on a jury verdict awarding damages to plaintiffs. *365 Plaintiff Clinton Bryant[1] was awarded $457,625 in damages. With pre-judgment interest of $76,548.29, the total award was $535,173.29. The jury awarded plaintiff Priscilla Bryant $5,250 on her per quod claim, and with pre-judgment interest the total award was $6,127.12. Defendant asserts several points on this appeal. Foremost, defendant contends that the trial judge erred in failing to charge the jury on the doctrine of comparative negligence. We disagree. However, we are satisfied that the trial judge erred in not charging the doctrine of avoidable consequences with respect to the issue of damages. Accordingly, we reverse and remand for a new trial on the issue of damages only.
For purposes of this appeal, we essentially accept the version of events as presented by plaintiff. Sometime in 1966, while a member of the armed services, plaintiff became aware that he had a heart murmur. In September of 1989, after suffering a chemical exposure at work, plaintiff was rushed to the hospital. There again, he was told of his heart murmur and advised to see a cardiologist.
Later that month, plaintiff saw Dr. Romeo Tiu, a cardiologist. Dr. Tiu advised plaintiff that if he has any type of dental work performed, he must be given antibiotics. Plaintiff testified at trial that Dr. Tiu told him he was to be given antibiotics for a full week prior to the dental procedure and for a full week subsequent to the procedure. However, Dr. Tiu disputed plaintiff's testimony and testified that he told plaintiff he was to take three grams of amoxicillin (antibiotic) one hour before the dental procedure and one and one-half grams of amoxicillin six hours later.
Prior to 1989, plaintiff became a dental patient of defendant. Following plaintiff's visit with Dr. Tiu, defendant was advised that plaintiff had a heart murmur and would require antibiotic treatment with any dental procedure, including teeth cleaning.
*366 On January 25, 1991, plaintiff had a five o'clock appointment with defendant to have his teeth cleaned and x-rayed. When plaintiff arrived for the appointment, he told defendant that the cleaning would not be possible that day. He advised defendant, in accordance with what he believed his cardiologist told him, that since he had not taken any antibiotics for the one week period prior to January 25, 1991, the procedure should be rescheduled. Defendant, however, advised plaintiff that he did not need antibiotics for such a period prior to the cleaning. Defendant then placed a dose of the medication in a cup and handed it to plaintiff. According to plaintiff, defendant said: "this is all you need." Plaintiff took the medication with a cup of water.
Approximately forty-five minutes to one hour later, defendant cleaned and x-rayed plaintiff's teeth. After the treatment, defendant told plaintiff that everything had gone well and that he had no cavities. Plaintiff testified that he paid the bill and left. He further testified that neither defendant, nor defendant's wife, who worked in the office, gave him any further medication to take, nor did they give him a prescription to obtain medication. However, plaintiff did not ask defendant for any medication, nor did he ask defendant for a prescription. Plaintiff said he did not question defendant anymore because he trusted him and had confidence in him, despite the contrary medical advice he received from his cardiologist, Dr. Tiu. Furthermore, after leaving defendant's office, plaintiff did not contact Dr. Tiu concerning the treatment provided by defendant.
Within two weeks of plaintiff's dental treatment he became very ill. Plaintiff was diagnosed with bacterial endocarditis. As a result, plaintiff required an aortic valve replacement and subsequent surgeries to repair or replace the prosthetic heart valve. Plaintiff's heart surgeries were performed in both New Jersey and Texas.

I
As noted, defendant asserts that the trial judge erred in not charging comparative negligence. Defendant opposed this suit *367 claiming he had given plaintiff a prescription for amoxicillin to be taken six hours after the dosage administered in defendant's office. Originally, it was defendant's position that plaintiff was negligent in not filling the prescription that defendant provided for the post-treatment antibiotics. However, the jury rejected this position and found that defendant had deviated from accepted standards of dental practice in not providing plaintiff with the post-procedure antibiotics or a prescription for same.
However, on appeal, defendant alters his basis for a comparative negligence charge. Defendant now urges that in light of plaintiff's knowledge of his medical condition and the instructions given to him by his cardiologist, the jury should have been instructed to consider plaintiff's failure to say something to defendant about the lack of a post-treatment dosage of antibiotics and his failure to consult with his cardiologist about the lack of post-treatment medication. Defendant asserts that plaintiff's lack of action in this regard is comparative negligence. We agree with defendant that plaintiff's post-treatment conduct was relevant to the trial. However, as discussed infra, the conduct was relevant to the issue of damages and not comparative negligence.
"Although ... the defense of contributory negligence is `fully applicable' in [dental] malpractice actions," the issue of the patient's fault or contribution to the harm suffered is difficult to resolve. Cowan v. Doering, 215 N.J. Super. 484, 493, 522 A.2d 444 (App.Div. 1987), aff'd, 111 N.J. 451, 545 A.2d 159 (1988) (quoting Flynn v. Stearns, 52 N.J. Super. 115, 121, 145 A.2d 33 (App.Div. 1958)). "In [dental] malpractice cases, contributory or comparative negligence, avoidable consequences, and proximate cause are interwoven and dependent upon events that occur over time." Madelynn R. Orr, Defense of Patient's Contribution to Fault in Medical Malpractice, 25 Creighton L.Rev. 665, 676 (1992). In assisting a jury to decide a case involving "the defense of patient's fault, courts must first clarify the sequence of events in relation to the doctrines of contributory or comparative negligence, proximate *368 cause and avoidable consequences." Ibid. See Ostrowski v. Azzara, 111 N.J. 429, 545 A.2d 148 (1988).
"[I]n our fault-based system of tort reparation, the patient's conduct must be divided into three categories in determining whether the patient shares any fault" and if so, what principles of law apply to that fault. D'Aries v. Schell, 274 N.J. Super. 349, 359, 644 A.2d 134 (App.Div. 1994). "The three temporal headings under which the patient's conduct is to be examined are (1) the pre-treatment period, (2) the treatment period during which the alleged malpractice occurred, and (3) the post-malpractice period." Ibid.
"The pre-treatment health habits of a patient are not to be considered as evidence of fault that would have otherwise been pled in bar to a claim of injury due to the professional misconduct of a health professional." Ostrowski, supra, 111 N.J. at 444, 545 A.2d 148. "Such matters are germane to the issue of proximate cause exclusively." D'Aries, supra, 274 N.J. Super. at 359, 644 A.2d 134. Comparative negligence, "however, comes into action when the injured party's carelessness occurs before defendant's wrong has been committed or concurrently with it." Ostrowski, supra 111 N.J. at 438, 545 A.2d 148. Last in the series of events, "the conduct of the patient following the period of alleged negligent treatment ... is relevant to the issue of damages," only. D'Aries, supra, 274 N.J. Super. at 359, 644 A.2d 134. Avoidable consequences is the doctrine that applies when "the injured party's carelessness occurs after the defendant's legal wrong has been committed." Ostrowski supra 111 N.J. at 438, 545 A.2d 148. "[T]he doctrine of avoidable consequences affects only the question of diminution of damages; it has no impact on comparative fault (liability) issues." D'Aries, supra, 274 N.J. Super. at 360, 644 A.2d 134.
Here, based on the evidence, the doctrine of avoidable consequences should have been charged to the jury. "The doctrine proceeds on the theory that a plaintiff who has suffered an *369 injury as the proximate result of a tort cannot recover for any portion of the harm that by the exercise of ordinary care he could have avoided." Ostrowski supra, 111 N.J. at 437, 545 A.2d 148. "[T]he injured person may not recover damages that do not result proximately from the defendant's breach of duty. Damages that might be avoided or mitigated are, therefore, not recoverable." Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1139 (5th Cir.1985).
We are satisfied that plaintiff engaged in no careless conduct during the course of defendant's negligent dental treatment that would allow a reasonable jury to find plaintiff comparatively negligent. The evidence is clearly to the contrary. Plaintiff advised defendant of the need to have antibiotics both before and after the dental procedure. Moreover, defendant was aware of plaintiff's medical condition requiring that he be provided antibiotics both before and after any dental procedure. When plaintiff told defendant that he had not been medicated and advised defendant of what he believed he needed, defendant told plaintiff he was incorrect. According to plaintiff's testimony, defendant told plaintiff "this is all you need," as he handed plaintiff antibiotic pills to take with water, prior to the dental procedure. The jury, obviously believing plaintiff's testimony, found that defendant did not provide plaintiff with any post-procedure medication, either directly or by prescription. Based on this evidence the jury could find, and did find, that defendant committed an act of negligence.
Although plaintiff was aware that he should receive medication post the dental procedure, his action in not asking defendant for medication or consulting with his cardiologist is temporally after defendant's malpractice. "[A] [health professional] must exercise the degree of care commensurate with the needs of the patient as [he] presents [himself]." Ostrowski, supra, 111 N.J. at 432, 545 A.2d 148. Here, plaintiff presented himself as a dental patient who required particular care, of which defendant was aware, that defendant did not provide. Defendant's failure to provide the post-procedure of medication is negligence. Plaintiff's *370 action or lack of action did not bring about or accentuate defendant's act of negligence.
Moreover, we are satisfied that public policy considerations preclude, under the facts of this case, submission of the question of comparative negligence to the jury. "The improper or inappropriate imposition of the defense of [comparative] negligence can lead to the dilution or diminution of a duty of care." Cowan v. Doering, 111 N.J. 451, 467, 545 A.2d 159 (1988). "The tortfeasor could become indifferent to the performance of his duty knowing that the very eventuality that he is obliged by law to prevent would, upon its occurrence, relieve him from responsibility." Cowan v. Doering, supra, 215 N.J. Super. at 495, 522 A.2d 444. "[W]e must avoid the indiscriminate application of the doctrine of comparative negligence (with its fifty percent qualifier for recovery) when the doctrine[] of avoidable consequences ... app[lies]." Ostrowski, supra, 111 N.J. at 441, 545 A.2d 148. "`It would be anomalous to hold that defendant, [a health care professional], has a duty to ... [meet the acceptable standards for delivery of health care] but a breach of that duty results in no liability for the very injury the duty was meant to protect against.'" Cowan v. Doering, supra, 111 N.J. at 467, 545 A.2d 159 (quoting Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 412, 290 A.2d 281 (1972)).

II
Having concluded that the trial court did not err in refusing to charge comparative negligence does not mean that plaintiff's conduct post defendant's negligence was irrelevant to the trial. "We do not in any sense minimize patients' responsibility to care for themselves." Tobia v. Cooper Medical Center, 136 N.J. 335, 343, 643 A.2d 1 (1994). Here, "defendant[] can assert a patient's self-neglect to limit damages." Ibid.
The error in this case, however, is that the trial judge gave no instruction to the jury concerning plaintiff's actions after the dental treatment. Although the issue of avoidable consequences was not raised below, we are satisfied that the lack of a *371 charge thereon constitutes plain error, that is, error "clearly capable of producing an unjust result." R. 2:10-2.
Plaintiff clearly was aware of his medical condition and was advised that he needed to be given antibiotics both before and after dental treatments. Although plaintiff's testimony was inconsistent with that of Dr. Tiu's in terms of the duration for taking the antibiotics, plaintiff knew of their necessity. After defendant's failure to provide post-procedure medication, plaintiff did not ask him about it, nor did he contact his cardiologist. A reasonable jury could conclude that a patient who was told he had to be medicated for one week both before and after his dental procedure, who was only medicated one hour prior thereto, could have mitigated his damages by inquiring of defendant or his cardiologist about the post dental procedure medication in an effort to insure that he received proper care. A reasonable jury could conclude based on the evidence, with an appropriate jury instruction, that plaintiff's conduct serves to decrease the amount of his damage award.
Hence, we approve in this context of post-treatment conduct submission to the jury of the question whether the just mitigation or apportionment of damages may be expressed in terms of the [plaintiff's] fault. If used, the numerical allocation of fault should be explained to the jury as a method of achieving the just apportionment of the damages based on their relative evaluation of each actor's contribution to the end result  that the allocation is but an aspect of the doctrine of avoidable consequences or of mitigation of damages. In this context, plaintiff should not recover more than [he] could have reasonably avoided, but the patient's fault will not be a bar to recovery except to the extent that [his] fault caused the damages.
An important caveat to that statement would be the qualification that implicitly flows from the fact that health care professionals bear the burden of proving that their mistreatment did not aggravate a preexisting condition: that the health care professional bear the burden of proving the damages that were avoidable.
[Ostrowski, supra, 111 N.J. at 446-47, 545 A.2d 148.]
Having addressed the issue raised in Point I of defendant's brief, and concluded that defendant is entitled to a new trial on the issue of damages, we do not address the remaining points in the brief. The judgment is reversed and the matter is remanded for a new trial on the issue of damages only.
NOTES
[1] Plaintiff in this opinion refers to Clinton Bryant.