No. 97-596

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 87

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LUKE SORAICH,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Maurice R. Colberg, Jr., Judge Presiding.

No

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, County Attorney; Joe Coble, Deputy County Attorney;

Billings, Montana

Submitted on Briefs: March 18, 1999

Decided: April 27, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1. Luke Soraich was convicted of deliberate homicide in a jury trial in the Thirteenth Judicial District, Yellowstone County. He appeals. We affirm.

¶2. The issue is whether the District Court erred in denying the defense's motions for a mistrial, depriving Soraich of his right to a fair trial.

¶3. In the early morning hours of January 20, 1996, Dane Jensen was killed in his Billings, Montana, home by a single gunshot to the head, fired at close range. Two of Jensen's friends, Leonard "Deuce" Driver and Luke Soraich, were present. Three others, A.J. Ellison, Lindsay Johnson, and Tom Meuret, sat in vehicles outside the residence.

¶4. At trial, the State of Montana presented testimony by, *inter alia*, Driver, Ellison, Johnson, and Meuret. The State's theory was that Soraich was in Jensen's home stealing a car stereo and other items when Jensen walked in unexpectedly, accompanied by Driver. Jensen confronted Soraich, and Soraich pulled a pistol and shot and killed Jensen.

¶5. The defense's theory at trial was that Driver could have been the killer. The defense emphasized inconsistencies between pretrial statements and the trial testimony of various witnesses.

¶6. Ellison, Soraich, Johnson, and Meuret had been "partying" in Laurel, Montana, on the evening of January 19-20. Ellison testified that earlier that evening, he and Soraich had driven to Billings to get more beer and had stopped by Driver's home, just down the block from Jensen's. There, Soraich obtained from Driver some bullets to try out in a two-shot derringer pistol he was considering buying. According to Meuret, the four of them drove back to Billings later in the evening "to party and

pick up some weed and pretty much just have a good time."

¶7. The two vehicles in which Ellison, Soraich, Meuret, and Johnson were traveling stopped and parked outside Jensen's residence. Soraich told Meuret that he would be back in a minute and went around to the back of the building. Meuret testified that he believed Soraich was going inside to get some marijuana. Jensen then drove up. Meuret told Jensen that Soraich was in the house talking to Jensen's roommate, not knowing that the roommate was in Colorado at the time.

¶8. Driver, who Ellison and Johnson had expected to join the party, drove up to the house and followed Jensen inside. Driver testified that as he followed Jensen toward the living room, he heard Jensen say, "What the fuck, Luke?" Driver then heard a gunshot and saw Jensen lying on the floor with Soraich standing over him holding a gun.

¶9. Driver testified that after the shooting Soraich reloaded the gun, then shoved it in his pocket and went into Jensen's bedroom. Driver testified that Soraich was holding a bag and loading items into it. When Soraich was finished in Jensen's room, he started to walk down the hall and said something to the effect of "let's go." He and Driver went out the front door.

¶10. Meuret testified that he heard a "pop" or a "bang" as he waited outside in the car. He said Soraich came to the car carrying a blue amplifier and a bag, which he put in the car. Soraich had a spot on his nose which Meuret testified he assumed was blood. Meuret further testified that Soraich told him he had just killed Jensen. Meuret suggested that Ellison and Johnson wait for the rest of them at a nearby convenience store. Soraich then followed Driver as he walked to his house to give his mother two cheeseburgers which he had purchased for her.

¶11. Soraich and Driver walked back to Jensen's car and removed a speaker box, which they placed in the trunk of the car Meuret was driving. They got into the car and caught up with Ellison and Johnson, and the two vehicles returned to Meuret's house in Laurel. On the way, Soraich shot a gun off into the air out the car window. They took the items from Jensen's house into Meuret's house with them.

¶12. Driver testified that he pulled Soraich aside and told him he wanted to go home, to which Soraich responded, "What are you going to do, take me down? Are you

going to turn me in?" Soraich handed the gun to Driver and added, "Take me down now then." Driver testified that he gave the gun back to Soraich. Meuret testified that Soraich took him into a back room, told him he had just killed Jensen, and said, "Don't tell anybody or I'll hurt you and your family."

¶13. Awhile later, Soraich took Driver home. Driver immediately told his mother that Soraich had killed Jensen, and she called the police.

¶14. The prosecution presented expert testimony that the coat Soraich was wearing when he was arrested on the morning of January 20, which witnesses testified was the same coat he had been wearing at Jensen's house, had gunshot residue on both sleeve cuffs, although there was none on his hands. The prosecution also presented the testimony of Billings, Montana, Detective Brett Lund. Lund had interviewed Driver on the morning of January 20, just hours after the killing. During Lund's testimony, the prosecutor asked him what sort of observations he had made about Driver during their initial interview. Lund replied, "When I took the statement from Mr. Driver, I felt the statement that I took from him, in my opinion, was honest." The defense objected on the basis that this testimony improperly vouched for the credibility of a witness. Following another objection to a question about what kind of training Lund had, defense counsel moved for a mistrial. The mistrial motion, as elaborated in chambers, was based upon the credibility matter. It was denied.

¶15. The defense's second motion for a mistrial was based upon the prosecution's closing argument. As stated in chambers, the objection was that:

[T]he whole tone of the rebuttal closing argument was burden-shifting. Specifically, [the prosecutor] indicated that in opening statement I said we would prove that Mr. Driver was wearing leather gloves and I would prove other things and that we failed to deliver, indicating that because the defendant failed to deliver proof that the jury had to convict.

This is clearly erroneous both factually and legally and is--grievous error, Your Honor. I would ask that the Court do one of two things, first, provide a limiting instruction to the jury admonishing them to disregard such statements by the prosecutor as being improper or, in the alternative, to grant a motion for a mistrial on the basis of prosecutorial error in closing.

Following the court's denial of the motions for an admonishing instruction or for mistrial, the jury found Soraich guilty of deliberate homicide. He appeals.

## Discussion

**¶16. Did the District Court err in denying the defense's motions for a mistrial, depriving Soraich of his right to a fair trial?**

**¶17. A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant has been denied a fair and impartial trial.** *State v. Gladue*, **1999 MT 1, ¶ 11, 972 P.2d 827, ¶ 11, 56 St.Rep. 1, ¶ 11. This Court's standard of review of a grant or denial of a motion for mistrial is whether the court abused its discretion.** *Gladue* **at ¶ 11.**

**¶18. As to the first motion for a mistrial, Soraich points out that while the District Court noted that the State had conceded Lund's answer was improper, the court concluded that the error, if any, was not prejudicial. Soraich stresses the impropriety of the response.**

**¶19. Soraich is correct that the prosecution may not vouch for the credibility of a government witness.** *See United States v. Frederick* **(9th Cir. 1996), 78 F.3d 1370, 1378. However, the statements at issue here would, at most, not be direct vouching by the prosecution, but rather indirect vouching through a witness. In this case, moreover, the context of the prosecutor's questions showed that he had asked Lund several questions about his observations regarding Driver's state of sobriety on the morning after the killing, but had never hinted at the issue of credibility. The State asserts, and we agree, that the unsolicited comment on Driver's perceived honesty therefore cannot constitute prosecutorial vouching.**

**¶20. More importantly, this Court does not presume prejudice from charges of prosecutorial misconduct.** *See State v. Hildreth* **(1994), 267 Mont. 423, 433, 884 P.2d 771, 778. Violation of a substantial right must be demonstrated as a result of the alleged prosecutorial misconduct.** *State v. Arlington* **(1994), 265 Mont. 127, 150, 875 P.2d 307, 325. Soraich has failed to demonstrate any such violation.**

**¶21. Lund's unsolicited comment was an isolated event in the midst of a seven-day trial. While Soraich's attorney objected to Lund's statement, he did not ask the court,**

after it denied his motion for mistrial, to strike the answer or to give a curative instruction. After reviewing the record, we conclude that the District Court did not abuse its discretion in denying the first motion for mistrial.

¶22. We next consider the remarks made by the prosecuting attorney in closing argument. The prosecutor called attention to the fact that "defendant" had failed to present certain evidence which defense counsel had indicated in his opening statement he would present. Soraich contends these comments were improper and prejudicial because they impermissibly shifted the burden of proof to the defense and, by implication, constituted a comment on Soraich's failure to testify.

¶23. Defense counsel told the jury in his opening statement that Driver had made inconsistent statements about where he was standing when the weapon was fired at Jensen. In so doing, counsel referred to a statement given to the investigator for the public defender's office. However, counsel did not call the investigator as a witness, and the theory advanced in the opening statement was not substantiated. While it is improper to comment on a criminal defendant's failure to testify, it is proper for a prosecutor to direct the jury's attention to facts in issue which could be controverted by persons other than the defendant. *See State v. Wiman* (1989), 236 Mont. 180, 185, 769 P.2d 1200, 1203. The prosecutor was entitled to comment on these matters suggested by defense counsel, because defendant's theories of the case lacked evidentiary support. *See State v. Dawson* (1988), 233 Mont. 345, 356-57, 761 P.2d 352, 359.

¶24. The next comment by the prosecutor to which objection was taken referenced the gloves Driver claimed he was wearing on the night of the murder. Driver gave those gloves to the police, and testing did not reveal any gunpowder residue on them. In his opening statement, Soraich's counsel suggested that these gloves were women's gloves, and in his closing he argued that Driver was not the type of person that would wear women's gloves.

¶25. The prosecutor responded:

His opening statement, defendant said he would show that [Driver] was wearing leather gloves and he provided the wrong gloves to the cops, women's gloves, gloves that he could never wear and never would wear. We know that's not true. We know that he could wear them. He put them on. We know that he did wear them because [Soraich's sister] . . .

so [testified]. Again, the defendant wanted you to believe what he did not deliver.

The prosecutor's comment was plainly in response to defense counsel's opening statement. Further, the jury was instructed that attorneys' comments were not to be considered as evidence, and the prosecutor twice admonished the jury in his closing argument that Soraich had no duty to produce any evidence.

**¶26. Finally, Soraich's argument that the prosecutor's remarks about "the defendant's" failures referred to him personally, rather than the defense in general, is meritless. The prosecutor's language was not of such a character that the jury would naturally and necessarily take it to be a comment on the failure of Soraich to testify. That the prosecutor made each remark as a generic reference to the defense is clear when the remarks are read in context. We conclude that Soraich has not established that the denial of his second motion for mistrial was an abuse of discretion.**

**¶27. Because the District Court did not abuse its discretion in denying Soraich's motions for mistrial, Soraich has not established that he was denied a fair trial. We affirm his conviction of deliberate homicide.**

/S/ J. A. TURNAGE

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

No