No. 99-213

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 169

300 Mont. 312

3 P.3d 1286

MARSHA HARDING, natural mother

and personal representative of the

Estate of CANDICE JAMIE JANE SHUCK,

deceased,

Plaintiff and Appellant,

v.

ZACHORY DEISS, M.D. and

GLENN SUBLETTE, M.D.,

Defendants and Respondents.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Deer Lodge,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

For Respondents:

Larry Riley, Susan P. Roy, Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: January 13, 2000

Decided: June 27, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Marsha Harding (Appellant) appeals from the denial by the Third Judicial District Court, Deer Lodge County, of her motion for a mistrial, and its issuance of a jury instruction on comparative negligence. We reverse.

¶2 We restate Appellant's issues on appeal as follows:

I Did the District Court err in allowing Respondents to present argument and jury instructions on comparative negligence?

II Did the District Court err in preventing Appellant from addressing the issue of comparative negligence in her closing argument?

III Were statements made by defense counsel in the jury's presence sufficiently objectionable to warrant a mistrial?

## STATEMENT OF FACTS

¶3 On August 3, 1994, Appellant's daughter, Candice Shuck (Candice), went horseback riding at the Fairmont Stables near Anaconda, Montana. Candice had asthma, was allergic to horses, and had a long medical history of breathing difficulties. During the ride she began to have trouble breathing and eventually collapsed. Two of the stables' employees administered CPR at the scene and Candice was transported by ambulance to the Anaconda Hospital emergency room where she was placed under the care of Dr. Zachory Deiss (Dr. Deiss). The next day she was transported to St. James Hospital in Butte, Montana, and placed under the care of Dr. Glenn Sublette (Dr. Sublette). Candice's family then brought in neurosurgeon Dr. Pius Baggenstos who cared for Candice until her death on August 11, 1994.

¶4 Following Candice's death, Appellant brought a wrongful death and survivor action alleging medical negligence by Dr. Deiss and Dr. Sublette (Respondents). A jury returned a verdict in Respondents' favor.

¶5 I Did the District Court err in allowing the Respondents to present argument and jury instructions on comparative negligence?

¶6 The issue before the jury in this medical malpractice case was whether Candice's irreversible brain injury occurred before or after she arrived at the Anaconda hospital. Appellant argued Respondents were negligent in their treatment of Candice by failing to intubate her immediately upon her arrival at the hospital, and that their negligence caused Candice's injury and death. Respondents claimed that Candice had already suffered a severe brain injury due to oxygen deprivation brought on by her asthma attack and it was her own negligence, not the negligence of Respondents, which caused her death.

¶7 Appellant asserts that the conduct of a patient can never be an issue in a claim of medical malpractice, and the issue of whether Candice was negligent should not have been submitted to the jury; whether Candice did something wrong before she was rendered unconscious is irrelevant to whether the Respondents were later negligent in her medical care. Appellant specifically argues that Court Instructions Nos. 11 and 12 should not have been given to the jury. Court Instruction No. 11 stated:

> [n]egligence on the part of Candice Shuck does not bar recovery of the estate of Candice Shuck unless Candice Shuck's negligence was greater than the combined negligence of the defendants. However, the total amount of damages that the estate of Candice Shuck would otherwise be entitled to recover will be reduced by the

court in proportion to the amount of negligence you attribute to Candice Shuck.

Court Instruction No. 12 read:

[t]he defendants have the burden of proving that the Plaintiff Candice Shuck was negligent. As to this defense, the defendants have the burden of proving the following:

1 That the plaintiff (Candice Shuck) was negligent.

2 That plaintiff's (Candice Shuck) negligence was the cause of Plaintiff's injury.

¶8 Appellant claims that these two instructions "in essence put before the jury the notion that they could determine whether Candice Shuck was legally negligent and then compare her negligence to the negligence of the [Respondents]." Appellant asserts that giving comparative negligence instructions in a medical malpractice case presents an opportunity to nullify every possible case against a physician for malpractice.

¶9 Respondents assert that a jury instruction on comparative negligence is appropriate in this action because it was Candice's negligence which caused her injury. They further claim that the jury never reached the issue of Candice's negligence because they concluded that Respondents were not negligent, and therefore, the issue of the jury instruction is moot.

¶10 We review jury instructions in a civil case for abuse of discretion. *Federal Mutual Insurance Co. v. Anderson,* 1999 MT 288, ¶ 44, 297 Mont. 33, ¶ 44, 991 P.2d 915, ¶ 44. Furthermore,

[a] district court has broad discretion in deciding whether to give or refuse a party's proposed jury instruction. In reviewing whether a particular jury instruction was properly given or refused, we must consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial.

*In re Estate of Lande, 1999 MT 162, ¶ 44, 295 Mont. 160, ¶ 44, 983 P.2d 308, ¶ 44 (citing Moore v. Imperial Hotels Corp., 1998 MT 248, ¶ 21, 291 Mont. 164, ¶ 21, 967 P.2d 382, ¶ 21).*

¶11 Appellant states, "[w]e urge that this issue of comparative negligence in a case like this because of some prior acts by the Plaintiff has simply never come up before or if it did it was simply rejected and never got appealed." While Appellant correctly asserts that this issue has not been directly addressed in Montana, other jurisdictions have given the matter significant consideration, often in the context of the related defense of contributory negligence. We find other jurisdictions' analyses of the defenses of contributory and comparative negligence in medical malpractice actions helpful in resolving this issue.

¶12 According to one author, "[c]ase law is replete with instances where the physician charged the plaintiff with contributory negligence for behavior that occurred before the patient sought treatment, but courts generally agree that the prior conduct should not be considered in assessing damages." Madelynn R. Orr, Comment, *Defense of a Patient's Contribution to Fault in Medical Malpractice Actions*, 25 Creighton L. Rev. 665, 667, (1992). Courts have, however, acknowledged the propriety of the defense of contributory or comparative negligence in certain circumstances. In an action for medical malpractice, the improper diagnosis of a patient's medical condition coupled with improper treatment resulted in the amputation of the patient's foot. *Durphy v. Kaiser,* 698 A.2d 459, 466 (D.C. 1977). Defendants raised the defense of contributory negligence claiming that the patient had failed to cooperate in his treatment. In discussing the standard for contributory negligence the court stated, "[i]n medical malpractice cases, contributory negligence is a valid defense if the patient's negligent act occurs with that of the physician and creates an unreasonable risk of improper medical treatment." *Durphy,* 698 A.2d at 467. *See also Champs v. Stone* 58 N.E. 2d 803 (Ohio Ct. App. 1944) (patient was contributorily negligent when he allowed a "grossly intoxicated" physician to give him an injection which resulted in the patient's injury).

¶13 Courts have noted that in assisting a jury to decide a case involving the patient's fault as a defense in medical malpractice cases, it is necessary to first clarify the sequence of events in relation to the interwoven doctrines of contributory or comparative negligence, proximate cause, and avoidable consequences. *Bryant v. Calontone*, 669 A.2d 286, 288 (N. J. Super. Ct. App. Div. 1996). In *Bryant*, a patient with a heart condition was advised by his cardiologist that he must be given antibiotics upon having any type of dental work performed. According to the patient, when he arrived to have his teeth cleaned, the Dentist handed him a dose of medication and said "this is all you need." *Bryant,* 669 A.2d at 287-88. Within two weeks of treatment, the patient became very ill and required several serious heart surgeries. In addressing the defendant's claim that the district court erred in not issuing a jury instruction on comparative negligence, the court stated "the patient's

conduct must be divided into three categories in determining whether the patient shares any fault and if so, what principles of law to apply to that fault." *Bryant,* 669 A.2d at 288.

¶14 "The three temporal headings under which the patient's conduct is to be examined are 1) the pre-treatment period 2) the treatment period during which the alleged malpractice occurred, and 3) the post-malpractice period." *Bryant,* 669 A.2d at 288. The *Bryant* court noted

> [t]he pre-treatment health habits of a patient are not to be considered as evidence of fault that would have otherwise been pled in bar to a claim of injury due to the professional misconduct of a health professional. Such matters are germane to the issue of proximate cause exclusively.

*Bryant, 669 A.2d at 289.*

The *Durphy* court held similarly, stating

> where the patient's negligent act merely precedes that of the physician and provides the occasion for medical treatment, contributory negligence is not a permissible defense. Where that occurs, the doctor's negligent act is considered an intervening cause which does not bar the patient from recovering.

*Durphy, 698 A.2d at 467.*

¶15 In *Whitehead v. Linkous*, M.D., 404 So.2d 377 (Fla. Dist. Ct. App. 1981) patient Whitehead consumed the drugs Valium and Darvocet in conjunction with a large amount of beer in an apparent suicide attempt. *Whitehead*, 404 So.2d at 378. A nurse administered Whitehead a medicine to induce vomiting. The nurse later noted that his color "didn't look right." *Whitehead*, 404 So.2d at 378. Whitehead lost consciousness and later died. The hospital asserted that his acts in attempting to commit suicide were a contributing cause of his death and thus, were subject to a jury instruction on comparative negligence. *Whitehead,* 404 So.2d at 378-79. The court held that any conduct by Whitehead before he entered the hospital which contributed to his death was not a proximate, legal cause of the damages sought, and the trial court erred in submitting the instruction on comparative negligence. *Whitehead,* 404 So.2d at 379. *See also Spence v. Aspen Skiing Co.*, 870 F. Supp 542 ( D. Colo. 1993) (noting that it would be inconsistent with the reasonable and normal expectations of both parties for the court to excuse or reduce the provider's liability

simply because it was the patient's own fault that she required care in the first place).

¶16 We agree with the foregoing decisions and conclude that comparative negligence as a defense does not apply where a patient's pre-treatment behavior merely furnishes the need for care or treatment which later becomes the subject of a malpractice claim. The patient's conduct before seeking medical treatment is merely a factor the physician should consider in treating the patient. Candice's actions are clearly pre-treatment conduct and as such are not to be considered as evidence of fault which may offset any negligent conduct by the Respondents. Acceptance of Respondents' argument (that Candice's act of riding a horse while having asthma is a negligent act which should be offset against any negligent act by Respondents in her treatment) would lead to an absurd result. Under such a theory, in any case where the patient was responsible for events that led to her hospitalization, the treating physician would not be liable for negligent treatment. We hold that in medical malpractice actions, jury instructions on a patient's comparative negligence are appropriate only where the patient's negligent conduct occurs contemporaneous with or subsequent to treatment. We conclude that because Candice's allegedly negligent acts were pre-treatment conduct, the District Court's issuance of jury instructions on comparative negligence was an abuse of discretion.

¶17 II Because we have concluded that the District Court erred in giving instructions on comparative negligence, we need not address the issue of whether the District Court committed error by preventing Appellant from discussing the issue of comparative negligence during closing arguments.

¶18 III Whether statements made by defense counsel in the jury's presence were sufficiently objectionable to warrant a mistrial.

¶19 A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Soraich,* 1999 MT 87, ¶ 17, 294 Mont. 175, ¶ 17, 979 P.2d 206, ¶ 17. This Court's standard of review of a grant or denial of a motion for mistrial is whether the court abused its discretion. *Soraich,* ¶ 17.

¶20 Appellant argues that certain statements made by defense counsel during the course of the trial warrant a mistrial. Defense counsel began his opening statement with the following:

[t]his is what this case is about. And we're going to prove it to you in a very clear and convincing manner. Let me tell you some things this case is about and some things it isn't about. We will show you that this family had lived in California for twenty some years. It was a troubled family with lots of problems. They moved to Anaconda in 1993 and brought with them a lot of problems. And in particular the problems of a sixteen year old daughter named Candice Shuck. . . . The evidence is going to show that Candice had been in trouble with the law. That she had abused drugs . . .

¶21 At this point in Respondents' opening statement, attorney for Appellant objected and approached the bench, stating "[y]our Honor, this sort of thing is highly prejudicial. . . I think it's important that I make a motion for a mistrial, with that statement. In the alternative I ask that that be stricken and the jury admonished." The court sustained Appellant's objection and admonished the jury to disregard the statement by defense counsel. Defense counsel continued his opening statement; "[t]he evidence will show that Candice had in her earlier life abused drugs. She had smoked even though. . ." Counsel for Appellant again objected; ". . . Your Honor this has absolutely nothing to do with a little girl who presents at the emergency room in an unconscious state. And I would ask the Court to grant a mistrial. . . I think this jury has been tainted by that statement. . . I don't think we can get a fair trial with that statement." The court denied the motion for mistrial but sustained the objection and again admonished the jury to disregard defense counsel's statements.

¶22 Appellant further claims that defense counsel's questioning on cross-examination regarding her education which was limited to special education through grade school, her unmarried status at the time of Candice's birth, and on having two other children with different last names than Appellant, was designed to embarrass and ridicule her. During cross-examination of Appellant, defense counsel asked her, "when Candice was born on January 6, 1978, to whom were you married at that time?" Upon objection to the question's relevance, defense counsel stated "[w]ell, let me rephrase it. Candice; was the last name given to her at the time of birth, Shucks [sic]?"

¶23 Appellant insists the cumulative effect of defense counsel's questions and comments indicating that Candice had prior problems with the law, that she had abused drugs, that Appellant had graduated only from special education classes and was unmarried at the time of Candice's birth, was inflammatory, highly prejudicial, and improper in a case of medical malpractice. Therefore she arges that the District Court should have granted her

motion for mistrial.

¶24 Respondents give no explanation for defense counsel's questioning of Appellant regarding her marital status at the time of Candice's birth. However, they claim the District Court did not abuse its discretion in refusing to grant a mistrial because the evidence regarding Candice's drug use and trouble with the law was relevant to show Candice was "rebellious and noncompliant," in support of their theory that Candice "was rebellious and ignored her own care and that is why she got into trouble." Moreover, Respondents claim such evidence is admissible because Appellant did not move *in limine* to exclude such evidence.

¶25 In a factually similar case the plaintiff contended that she suffered "devastating, incurable prejudice" by the court's failure to preclude the defendants from referring, in their opening statements, to the decedent's alleged comparative negligence. In a memorandum opinion, the New York Appellate Court stated;

[w]hile it is true that the alleged negligence of the decedent prior to coming to the hospital was not relevant, because the defendants' liability extends only to that portion of the plaintiff's injuries attributable to the defendants' malpractice. . . , nevertheless, the defendants' opening comments on the subject were brief. Indeed, the trial court ultimately properly dismissed the defenses of comparative negligence and gave, by the plaintiff's own admission, a proper charge to the jury on this subject [and] instructed the jury to "completely disregard defense counsels' opening statements which alluded to the question of [decedent's] blame or fault before coming to the hospital."

*Mendoza v. Kaplowitz, 215 A.D. 2d 735, 735-36 (N.Y. App. Div. 1995).*

The court further concluded that

> the plaintiff's allegation of "incurable" prejudice is belied by her actions at trial, where, after the opening statements, and after having moved for a mistrial on these grounds, the plaintiff was confronted with a problem of jurors' availability, and argued forcefully against a mistrial, stating, among other things. . . "I really want to proceed with this trial."

*Mendoza, 215 A.D. 2d at 736.*

Given the plaintiff's statements, the court concluded that the plaintiff "appeared convinced that any prejudice resulting from the opening statements had abated." *Mendoza.* 215 A. D.2d at 736.

¶26 In the instant action, Appellant repeatedly moved for a mistrial based on Respondents' comments during opening statement claiming she could no longer get a fair trial. Of equal importance, unlike the court in *Mendoza,* the District Court did not dismiss the defense of comparative negligence or charge the jury to completely disregard defense counsel's opening statements which alluded to the question of Candice's blame or fault before coming to the hospital. Rather, it issued jury instructions on such a defense.

¶27 We have concluded that the defense of comparative negligence was improper based on the facts of this case. Because Respondents argue that the comments at issue during their opening statement and during cross-examination of Appellant went to their comparative negligence defense, defense counsel's comments regarding Candice's "prior acts" denied Appellant a fair and impartial trial and the District Court abused its discretion in denying Appellant's motion for a mistrial.

¶28 Reversed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

Justice Karla M. Gray, specially concurring.

¶29 I join the Court's opinion in its entirety. With regard to issue 1, however, I write separately to briefly address an argument raised by the Respondents and noted by the

Court.

¶30 We properly conclude in this case that comparative negligence as a defense does not apply where a patient's pre-treatment behavior merely furnishes the need for medical care or treatment which later becomes the subject of a malpractice claim. On that basis, we hold that the District Court abused its discretion in instructing the jury on comparative negligence.

¶31 The Respondents argue, in this regard, that

> the jury never reached the issue of Candice's negligence on her survivorship claim because the jury concluded that Defendants were not negligent in both the survivorship and wrongful death claims. Thus it is a moot issue on appeal.

They advance no authorities in support of their argument, however, as required by Rule 23 (b), M.R.App.P., and it is not this Court's job to do the parties' work for them. For that reason, the Respondents are not entitled to have this Court address their argument on the merits.

/S/ KARLA M. GRAY