Cavanagh, J.
(concurring in part and dissenting in part). I agree with the majority that MCL 600.6311 applies in this case and join that portion of the lead opinion in full. With respect to the applicability of the medical malpractice noneconomic damages cap, I concur only in the result because I remain committed to my position in Jenkins v Patel, 471 Mich 158; 684 NW2d 346 (2004). And finally, I must respectfully dissent from the majority’s decision allowing the trier of fact to consider plaintiffs alleged pretreatment negligence. I agree with the trial court and the Court of Appeals, as well as the Restatement and a majority of other jurisdictions, that it would be improper for the jury to consider plaintiffs pretreatment negligence. Thus, I would affirm the decision of the Court of Appeals.
Today, a plurality of this Court makes a mockery of tort law by holding that a jury can consider a plaintiffs pretreatment negligence to determine liability. Justice MARKMAN’s approach, allowing the jury to consider plaintiffs pretreatment negligence only when deter *598 mining damages, is also contrary to general tort principles. While Justice Markman claims that allowing the jury to consider a plaintiffs pretreatment negligence in a medical malpractice action is consistent with prior law, ante at 575 n 3, a close reading of this Court’s precedent shows that it does not support Justice MARK-MAN’s argument. Make no mistake, allowing a jury to consider a plaintiffs pretreatment negligence in a medical malpractice action is a sweeping new decision, with no basis in this Court’s prior rulings.
It is an axiom of tort law that the defendant takes the plaintiff as he finds her. Wilkinson v Lee, 463 Mich 388, 396; 617 NW2d 305 (2000). Potentially eviscerating a defendant’s liability or reducing a plaintiffs damages on the basis of a condition that a plaintiff brings to the table ignores this foundational principle of tort law. It also opens the door to scrutiny of a medical malpractice plaintiffs pretreatment health habits and lifestyle in nearly every medical malpractice action. “[W]hatever the wisdom or folly of our lifestyles, society, through its laws, has not yet imposed a normative life-style on its members.” Ostrowski v Azzara, 111 NJ 429, 444; 545 A2d 148 (1988). Today’s majority imposes a judicially created normative lifestyle on the citizens of this state.
The majority also subverts the text of MCL 600.6304 when it holds that § 6304 requires the trier of fact to determine the comparative negligence of all who are a proximate cause of the plaintiffs injury. The statute actually states: “ ‘fault’ includes an act. . . that is a proximate cause of damage sustained by a party.” MCL 600.6304(8) (emphasis added). While the majority focuses on plaintiffs injury, its attention would be more properly focused on the plaintiffs damage.
The plaintiffs damage in a medical malpractice action is determined by the difference between the dece *599 dent’s hypothetical life without the negligence of the doctor and the actual result. In this case, the damage plaintiff claims is the difference between the life of a woman who suffered a mini-stroke that was properly treated and a dead woman. The majority potentially ehminates all doctors’ liability for all negligent behavior by mischaracterizing the damage. It is absurd to assert that plaintiffs pretreatment behavior can be considered the proximate cause of the damage inflicted by the doctor’s malpractice.
“As a general rule, negligence by a patient that occurred before the malpractice and provided the occasion for the treatment that is the subject of the malpractice claim cannot give rise to a defense of comparative negligence.” Moore & Gaier, A Plaintiff’s Culpable Conduct, NY Law J 3 (Mar 3, 1998). Comment m to Restatement Torts, 3d, Apportionment of Liability, § 7, provides that the jury in a medical malpractice action cannot consider the plaintiffs conduct that created the condition that the doctor was employed to remedy. So, in this case, the trial court was correct to prevent the jury from considering plaintiffs failure to regularly take her medication.
In addition to the Restatement, I am persuaded by the wealth of authority from other jurisdictions that have refused to allow juries to consider a plaintiffs pretreatment negligence in medical malpractice actions. For example, the Florida Court of Appeals, in Matthews v Williford, 318 So 2d 480, 483 (1975), persuasively held that “conduct of a patient which may have contributed to his illness or medical condition ... simply is not available as a defense to malpractice which causes a distinct subsequent injury.. ..” See, also, Mercer v Vanderbilt Univ, Inc, 134 SW3d 121, 129-130 (Tenn, 2004); DeMoss v Hamilton, 644 NW2d 302, *600 306-307 (Iowa, 2002); Harding v Deiss, 300 Mont 312, 318; 3 P3d 1286 (2000); Smith v Kennedy, 2000 US Dist LEXIS 9897, 11-12 (D Kan, 2000); Harvey v Mid-Coast Hosp, 36 F Supp 2d 32, 37-38 (D Me, 1999); Durphy v Kaiser Foundation Health Plan of Mid-Atlantic States, Inc, 698 A2d 459, 465-467 (DC App, 1997); Fritts v McKinne, 934 P2d 371, 374 (Okla Civ App, 1996); Spence v Aspen Skiing Co, 820 F Supp 542, 544 (D Colo, 1993); Van Vacter v Hierholzer, 865 SW2d 355, 359 (Mo App, 1993); Martin v Reed, 200 Ga App 775, 777; 409 SE2d 874 (1991); Jensen v Archbishop Bergan Mercy Hosp, 236 Neb 1, 15; 459 NW2d 178 (1990); Cowan v Doering, 215 NJ Super 484, 495; 522 A2d 444 (1987); Owens v Stokoe, 115 Ill 2d 177, 183; 503 NE2d 251 (1986).
Justice MARKMAN attempts to make a distinction between a distinct subsequent injury and an injury that would be part of the “natural and foreseeable result of the plaintiffs original negligence.” Ante at 554 n 9. This distinction, however, is a distinction without a difference when examining the proper damage in a medical malpractice action. Because a tortfeasor must take a plaintiff as he finds her, the plaintiff in Justice MARK-MAN’s examples would be taken as a plaintiff with a broken leg. Without the negligence of the doctor, a plaintiff with a broken leg could expect full recovery. Regardless of whether the doctor’s negligence results in death or in a poorly set leg, the damage in the case is the difference between the expected full recovery and the actual result. In neither example, can the plaintiffs negligence in breaking her leg be a proximate cause of the damage.
Because the majority mischaracterizes the damage and allows the jury to consider plaintiffs pretreatment negligence, I must respectfully dissent. I refuse to take *601 part in the judicial determination of what is and is not socially acceptable behavior. Smokers, couch potatoes, and fast food connoisseurs pick your doctors carefully because after today, no matter how negligent a doctor is in treating you, the jury will be able to consider your poor health habits when deciding whether to hold the doctor liable. I would affirm the holding of the trial court and the Court of Appeals.
Kelly, J., concurred with Cavanagh, J.