Weaver, J.

(concurring in part and dissenting in part).

i
I dissent from the majority’s holding that pursuant to MCL 600.6304, plaintiffs pretreatment negligence may be considered by the jury in assessing comparative negligence because it may have been a proximate cause of plaintiffs death. Ante at 546.[1] I agree with Justice CAVANAGH’s concurring and dissenting opinion that it would be improper for the jury to consider plaintiffs pretreatment negligence to determine comparative negligence, ante at 597, and I would affirm the Court of Appeals decision on this point.
To determine the comparative negligence of the parties, MCL 600.6304 provides that the trier of fact in a tort action shall determine the percentage of the total fault of all persons that contributed to the death or *602 injury, including each plaintiff. MCL 600.6304(8) defines “fault” as “an act, an omission, conduct. . . that is a proximate cause of damage sustained by a party.” (Emphasis added.)
As Justice CAVANAGH explains, the proper focus of the statute is on the plaintiffs damage, not the plaintiffs injury, and “[t]he plaintiffs damage in a medical malpractice action is determined by the difference between the decedent’s hypothetical life without the negligence of the doctor and the actual result.” Ante at 598-599.[2]
Further, I would hold that the plaintiffs pretreatment negligence did not fall within MCL 600.6304’s definition of “fault” for the purposes of comparative negligence. While plaintiffs pretreatment negligence caused the need for care or treatment that led to the alleged medical malpractice, the plaintiffs pretreatment negligence was not a proximate cause of plaintiffs damages.
Proximate cause, or legal cause, as it is also known, involves examining the foreseeability of consequences, and considering whether a defendant should be held legally responsible for such consequences. Skinner v Square D Co, 445 Mich 153, 163-164; 516 NW2d 475 (1994). Deciding proximate cause is a policy determination of the courts:
“Proximate cause” — in itself an unfortunate term — is merely the limitation which the courts have placed upon the actor’s responsibility for the consequences of the ac *603 tor’s conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would “set society on edge and fill the courts with endless litigation. As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy. [Prosser & Keeton, Torts (5th ed), § 41, p 264.]
To be allocated as “fault” for the purposes of comparative negligence under MCL 600.6304, a plaintiffs negligence must be a proximate cause of the plaintiffs damages. The majority does not offer any analysis regarding why it is appropriate to consider plaintiffs pretreatment negligence as a proximate cause of her death, but simply states that it may be considered.
I note that all the other state courts that have considered the question whether a patient’s own pretreatment negligence could be considered a proximate cause of the patient’s damages for purposes of comparative negligence have ultimately decided that it should not.[3] Owens v Stokoe, 115 Ill 2d 177, 183; 503 NE2d 251 (1987) (dental patient’s failure to obtain second opinion, prior poor oral hygiene, and alleged refusal to *604 permit X-ray to be taken of his teeth were insufficient to raise issue of contributory negligence because parasthesia was proximately caused by damage to the left interior alveolar nerve during surgery and conduct of patient did not prevent surgeon from properly performing surgery); Eiss v Lillis, 233 Va 545, 553-554; 357 SE2d 539 (1987) (the plaintiffs negligently taking aspirin along with heart medicine before the physician’s alleged negligence was not a proximate cause of the plaintiffs death); Jensen v Archbishop Bergan Mercy Hosp, 236 Neb 1, 15-16; 459 NW2d 178 (1990) (although the plaintiffs failure to lose weight may have been causally related to his injury, his conduct regarding his weight problem merely furnished an occasion or condition for the medical care that was the basis of the medical malpractice action, and it was improper to instruct the jury to consider whether the plaintiff had been contributorily negligent); Harding v Deiss, 300 Mont 312, 318; 3 P3d 1286 (2000) (the plaintiffs negligence in riding a horse when she had asthma and was allergic to horses could not be compared to physician’s failure to immediately intubate her upon her arrival at the hospital); DeMoss v Hamilton, 644 NW2d 302, 307 (Iowa, 2002) (the plaintiffs failure to stop smoking, have regular follow-up examinations, lose weight, and begin an exercise program after a heart attack provided the occasion for medical treatment, but was irrelevant to the question of defendant’s medical negligence). See also Harvey v Mid-Coast Hosp, 36 F Supp 2d 32, 37-38 (D Me, 1999), Spence v Aspen Skiing Co, 820 F Supp 542, 544 (D Colo, 1993), Van Vacter v Hierholzer, 865 SW2d 355, 359 (Mo App, 1993), and Nelson v McCreary, 694 A2d 897 (DC App, 1997).[4]
*605 In holding that plaintiffs pretreatment negligence may be considered a proximate cause of plaintiffs damages for purposes of comparative negligence, the majority abandons the long-standing principle of tort law that the defendant takes the plaintiff as he finds her. See 2 Restatement Torts, 2d,§ 461, p 502; Rawlings v Clyde Plank & Macadamized Rd Co, 158 Mich 143, 146; 122 NW 504 (1909). As recently as 2000 this Court, including the majority, recognized and applied this principle of law. Wilkinson v Lee, 463 Mich 388, 396; 617 NW2d 305 (2000). The patient’s conduct before seeking medical treatment is merely a factor the physician should consider in treating the patient. Harding, supra at 318. Rather than retreating from such a long-established principle, I would affirm the Court of Appeals on this issue.
ii
I join in full § III(B) of the lead opinion, recognizing that the medical malpractice noneconomic damages cap of MCL 600.1483 applies to a wrongful death action based on an underlying claim of medical malpractice and concluding that the higher cap of MCL 600.1483 applies when the injured person, at any time while still living and as a result of a defendant’s negligent conduct, fits with the ambit of MCL 600.1483(1).[5]
*606 hi
I also join in full § III(C) of the lead opinion, concluding that because the term “plaintiff,” as used in MCL 600.6311, refers, for purposes of a wrongful death action, to the decedent, and because Mrs. Shinholster, the decedent, was sixty-one years old at her death and at the time of judgment, the damages awarded to plaintiff should not be reduced to their present value.[6]
*607 IV
Because I would hold that the plaintiffs pretreatment negligence in this medical malpractice action did not fall within MCL 600.6304’s definition of “fault,” and therefore could not be considered for the purposes of comparative negligence, I would affirm the Court of Appeals on all counts.
KELLY, J., concurred with respect to sections I, III, and IV.

 The plaintiffs negligence after seeking treatment is not at issue in this case; the parties agree that a plaintiffs negligence after seeking treatment may he considered in a comparative negligence analysis. See Pietrzyk v Detroit, 123 Mich App 244, 248-249; 333 NW2d 236 (1983), and Jalaba v Borovoy, 206 Mich App 17, 23; 520 NW2d 349 (1994). The issue here focuses solely on plaintiffs conduct before seeking treatment.

 It should he noted that plaintiffs pretreatment conduct and general health will be considered when the jury determines the amount of plaintiffs damages. For example, in this case, the jury found that decedent had a life expectancy of eight years, rather than the 15.44-year life expectancy provided by the mortality tables for a sixty-one-year-old woman in good health, or the ten to fifteen-year life expectancy that plaintiffs expert opined.

 Although in 1996 the Tennessee Supreme Court held that a decedent’s negligence in causing the initial injury would be considered in apportioning fault for the purposes of comparative negligence, Gray v Ford Motor Co, 914 SW2d 464, 467 (Tenn, 1996), that case was overruled in May of 2004, by Mercer v Vanderbilt Univ, Inc, 134 SW3d 121, 125 (Tenn, 2004). In Mercer the court held that “a patient’s negligent conduct that occurs prior to a health care provider’s negligent treatment and provides only the occasion for the health care provider’s subsequent negligence may not be compared to the negligence of the health care provider.” Id. at 130.

 But see, contra, Wyatt v United States, 939 F Supp 1402 (ED Mo, 1996).

 MCL 600.1483 provides:
(1) In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to section 6304, in which case damages for noneconomic loss shall not exceed $500,000.00:
*606 (a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:
(i) Injury to the brain.
(ii) Injury to the spinal cord.
(b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.
(c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.
(2) In awarding damages in an action alleging medical malpractice, the trier of fact shall itemize damages into damages for economic loss and damages for noneconomic loss.
(3) As used in this section, “noneconomic loss” means damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss.
(4) The state treasurer shall adjust the limitation on damages for noneconomic loss set forth in subsection (1) by an amount determined by the state treasurer at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index. As used in this subsection, “consumer price index” means the most comprehensive index of consumer prices available for this state from the bureau of labor statistics of the United States department of labor.

 MCL 600.6311 provides: “Sections 6306(l)(c), (d), and (e), 6307, and 6309 do not apply to a plaintiff who is 60 years of age or older at the time of judgment.”