No. 00-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 278

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD RUSSELL,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; C. Mark Fowler,,

Assistant Attorney General, Helena, Montana

George Corn, Ravalli County Attorney; T. Geoffrey Mahar,

Deputy County Attorney, Hamilton, Montana

Submitted on Briefs: July 12, 2001

Decided: December 19, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Richard Russell was convicted of attempted deliberate homicide after a jury trial in the Twenty-First Judicial District Court, Ravalli County. He appeals from the District Court's judgment and commitment and we affirm.

¶2 The issues on appeal are:

¶3 1. Whether Russell was denied his right to effective assistance of counsel when his attorney failed to challenge for cause a relative of the victim and used two peremptory challenges to strike jurors outside the jury pool.

¶4 2. Whether there was sufficient evidence to convict Russell of attempted deliberate homicide.

## BACKGROUND

¶5 On December 29, 1998, Russell and his wife June ate dinner at Fern Todd's house in Hamilton, Montana. After dinner, they sat around drinking beer, playing cards and chatting with Todd, Charlie Newgard and Steve Toney. Around 10:00 p.m., Robert Prindel arrived at Todd's house with his brother Keith Westberry. Prindel and Westberry were drinking whiskey. As the evening continued, Prindel and Russell argued. Todd asked Russell to leave, but he stayed. Russell and Prindel then had a fight and Russell stabbed Prindel in the left side.

¶6 The State of Montana charged Russell with attempted deliberate homicide. At his trial, the jury heard differing versions of the fight from the various witnesses. Russell, who was outside when police officers arrived on the scene, testified that following escalating tension between him and Prindel all night, Prindel flew across the kitchen at him and hit

him in the mouth. Newgard, who was standing behind Russell, pushed him back toward Prindel. The next thing Russell knew, he was under Prindel on the floor and Prindel was hitting him. No one intervened to break up the fight, which lasted several minutes. Russell testified that he did not clearly remember what happened after Prindel "sucker punched" him, but admitted he probably stabbed Prindel.

¶7 Prindel testified that the fight was more like a wrestling match, in which he took Russell to the ground and held him there until Russell said, "I quit." Prindel testified that, after the fight, Russell went outside and he remained inside, sitting at the end of the table and chatting with others who remained in the house. Prindel testified he then felt an arm come up over his shoulder and looked up and saw Russell, at the same time feeling a stinging sensation that went through his body from his toes to his ears and burned like nothing he had ever felt before. He testified that he finally broke loose to his left and followed Russell to the door. When he reached the door, he felt lightheaded and sat back down at the table. He woke up 47 days later.

¶8 Russell's wife June testified that Prindel was involved in two arguments. First, he got into a shoving match with Newgard. Then, he challenged Russell to a fight. Russell accepted and asked Prindel to step outside. When Russell went outside, Prindel closed the door on him. Russell eventually got back inside the house and, as he and June prepared to leave, Prindel punched Russell. Newgard pushed Russell back into Prindel, and the two punched each other for a few minutes before ending up on the kitchen floor, where Newgard joined them. In the end, Russell was on his back, saying "I quit," and the three men got up. When Prindel got up, June noticed blood on the left side of his shirt. June and Russell walked out of the house and the police arrived a few minutes later.

¶9 Westberry testified his brother, Prindel, and Russell were not getting along all night and that, before the fight, Newgard asked Russell to leave because he was afraid Russell was going to start a fight. Westberry said Russell provoked the fight by slapping Prindel in the back of the head and then Prindel and Russell were both on the kitchen floor wrestling. Westberry testified he did not make any effort to break up the fight because he thought it was not serious, and it ended after 4 or 5 minutes when Russell quickly walked outside. Prindel sat down at the kitchen table, talking with Westberry and Newgard. Westberry was seated two or three feet from his brother when he saw Russell come back in the house and approach Prindel from behind. Westberry said it looked like Russell gave Prindel a hug, and he did not see a knife. Westberry and Prindel then chased Russell out the door. When Prindel sat back down, he put his head down on the table like he was really tired. After

June came back inside and warned Westberry that Prindel might be cut or stabbed, Westberry discovered blood on Prindel's shirt and the stab wound on his left side.

¶10 Newgard testified he asked Russell and June to go home, prior to the fight, because Russell "was being obnoxious"--rowdy and loud. According to Newgard--who denied fighting with Prindel that night--the fight between Russell and Prindel occurred outside. Newgard testified that, after the fight ended, Prindel went into the house and sat down at the kitchen table. Russell then came back into the house and hugged Prindel from behind. Newgard did not see a knife but heard Prindel say, "Oh, fuck, that hurt deep." Prindel then got up and took two steps toward the door before spinning around and sitting back down at the table. Westberry then noticed the blood on Prindel's shirt and Newgard called 911.

¶11 When Hamilton Police Officers David Dedmon and Mark Twist arrived at the scene, Russell was outside the home and admitted stabbing Prindel. Russell stated, however, that he was defending himself and that Prindel would not allow him to leave the home.

¶12 Prindel was rushed to the hospital, where it was determined that a knife had punctured the left ventricle of his heart. The pericardium surrounding his heart filled with blood and restricted the heart's beating, requiring emergency heart surgery. The heart surgeon testified that the knife had been "practically bur[ied]" between Prindel's ribs in "a very purposeful thrust" and that Prindel's chance of surviving such a wound was less than 10 percent. The stab wound also pierced Prindel's colon, contaminating his abdominal contents. Prindel was in a coma for 47 days following the stabbing. As a further complication from his injuries, Prindel lost nearly all of his vision in both eyes.

¶13 Russell presented a defense of justifiable use of force and the District Court instructed the jury on aggravated assault as a lesser included offense of attempted deliberate homicide. The jury found Russell guilty of attempted deliberate homicide. Based in part on his lengthy prior criminal record, the District Court sentenced him to life in prison plus ten years for use of a deadly weapon.

## DISCUSSION

¶14 1. Was Russell denied his right to effective assistance of counsel when his attorney failed to challenge for cause a relative of the victim and used two peremptory challenges to strike jurors outside the jury pool?

¶15 Russell claims his counsel made two errors during the jury selection process. First, counsel failed to challenge for cause a juror who was related to the victim. Second, counsel used two peremptory challenges to strike two jurors who were outside the main panel of 24 potential jurors.

¶16 A person alleging ineffective assistance of counsel must establish ineffectiveness and prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed.2d 674, 693. Challenged actions of counsel are presumptively deemed matters of trial strategy. *Strickland*, 466 U.S. at 689. A silent record cannot rebut the strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Therefore, where the record does not illuminate the basis for the challenged acts or omissions, an ineffective assistance of counsel claim is more appropriately made in a petition for postconviction relief in connection with which a supplemental record may be made. *See State v. St. John*, 2001 MT 1, ¶ 40, 304 Mont. 47, ¶ 40, 15 P.3d 970, ¶ 40.

¶17 The potential juror who Russell now contends should have been disqualified for cause disclosed during voir dire that the stepfather of his youth later married Prindel's mother, to whom the stepfather was still wed at the time of his demise prior to trial. In response to questioning by defense counsel, the prospective juror stated he had not seen Prindel for many years and consequently did not know if his impression of Prindel was favorable or not favorable. The potential juror was eventually excused from the jury panel on a peremptory challenge. The record contains no explanation of why Russell's counsel did not challenge that potential juror for cause.

¶18 Similarly, the record contains no explanation whatsoever for Russell's counsel's use of peremptory challenges on two jurors outside the main jury panel of the first 24 persons. He challenged potential jurors number 54 and 58.

¶19 The use of peremptory challenges is inherently a tactical function and, here, the record is silent regarding why Russell's counsel acted or failed to act in the manners now challenged. Consequently, Russell's contentions regarding ineffective assistance of counsel would more appropriately be raised in a petition for postconviction relief. Therefore, we decline to discuss this issue further.

¶20 2. Did sufficient evidence exist to convict Russell of attempted deliberate homicide?

¶21 Russell contends his use of force was justified to defend himself. Therefore, he claims, the State did not prove beyond a reasonable doubt that he was guilty of attempted deliberate homicide.

¶22 Our standard of review of the sufficiency of the evidence to support a jury verdict in a criminal case is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Gladue,* 1999 MT 1, ¶ 34, 293 Mont. 1, ¶ 34, 972 P.2d 827, ¶ 34 (citations omitted). The direct testimony of one witness who is entitled to full credit is sufficient proof of any fact. *Gladue*, ¶ 38 (citation omitted). In addition, where the testimony of witnesses conflicts, it is the province of the jury to decide which witness is more credible. *State v. Sattler*, 1998 MT 57, ¶ 55, 288 Mont. 79, ¶ 55, 956 P.2d 54, ¶ 55.

¶23 The jury was instructed that a person commits the offense of attempted deliberate homicide when, with the purpose to commit deliberate homicide, he commits any act which constitutes a material step toward the commission of deliberate homicide. Existence of a mental state--here, "with the purpose to commit deliberate homicide"--may be inferred from the acts of the accused and the facts and circumstances connected with the offense. *See* § 45-2-103(3), MCA.

¶24 To find the defendant not guilty under a defense of justifiable use of force, the jury must find that the defendant (1) was not the aggressor, (2) reasonably believed that he was in imminent danger of unlawful harm, and (3) used reasonable force necessary to defend himself. *Sattler,* ¶ 55. In this case, the jury properly was instructed that it was Russell's burden to submit enough evidence to raise a reasonable doubt as to his guilt. *See Sattler*, ¶ 55. The justifiable use of force defense is subsumed within our review standard of whether, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Sattler*, ¶ 56.

¶25 Although he contended he was defending himself, Russell admitted at trial that he did not believe Prindel had any type of weapon during the fight or afterward. A rational trier of fact could have believed the testimony of Prindel and other witnesses to the effect that Russell first provoked the fight with Prindel by hitting him in the head, and that he later came up behind the seated and unarmed Prindel and stabbed him in the heart. A rational jury also could have believed the medical testimony that Russell had practically buried the

knife between Prindel's ribs "in a very purposeful thrust," causing a wound that had a 90 percent probability of killing the victim.

¶26 We conclude that, viewing the evidence in the light most favorable to the prosecution, the jury could have found all the essential elements of the offense beyond a reasonable doubt. We hold, therefore, that sufficient evidence supports the jury's verdict that Russell is guilty of attempted deliberate homicide.

¶27 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE