No. 01-720

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 149

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RAYMOND HERRMAN,

Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 00-697,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Gary E. Wilcox, Attorney at Law, Billings, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Mark Mattioli,
Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Scott D. Twito,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  October 31, 2002

Decided:  May 28, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Raymond Herrman (Herrman) appeals from his conviction of driving under the influence of alcohol following a jury trial in the Montana Thirteenth Judicial District Court, Yellowstone County. We dismiss Herrman's claim of ineffective assistance of counsel and overrule *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57, to the extent that it is inconsistent with this opinion. We decline to address whether the District Court abused its discretion in denying Herrman's motions for mistrial.

¶2 The following issues are presented on appeal:

¶3 1. Did Herrman receive constitutionally effective assistance of counsel during voir dire?

¶4 2. Did the District Court abuse its discretion in denying Herrman's motions for mistrial?

<u>Factual and Procedural Background</u>

¶5 On August 18, 2000, Herrman was arrested in Billings, Montana, by a city police officer. He was subsequently charged with the offense of Driving Under the Influence of Alcohol in violation of § 61-8-401, MCA. Herrman was represented at trial by a Deputy Yellowstone County Public Defender and by the Chief Deputy Yellowstone County Public Defender. The jury found Herrman guilty of DUI and the District Court sentenced Herrman to ten years in the Montana State Prison. As this was Herrman's fourth felony conviction of driving under the influence of alcohol, the court designated Herrman as a persistent felony offender. Herrman appeals his conviction.

2

¶6     The circumstances giving rise to this appeal occurred at the beginning of Herrman's trial, specifically, during his initial entrance into the courtroom and during jury voir dire. Prior to the commencement of voir dire, Herrman was brought into the courtroom, in front of prospective jury members, wearing belly chains and handcuffs, which he wore for approximately ten minutes. Immediately following his entrance into the courtroom, Herrman's counsel moved for a mistrial, arguing that his appearance would affect the ability of the jurors to be impartial. The District Court denied the motion for mistrial and directed counsel to address the issue during voir dire. During voir dire, the State and defense counsel questioned the jury panelists about the incident. Each panelist responded that seeing Herrman in restraints would not affect his or her ability to be fair and impartial. At the close of trial, while the jury was in deliberations, defense counsel renewed the motion for a mistrial. The District Court reserved its ruling pending a poll of each jury member. After the jury had concluded deliberations, and prior to the reading of the verdict, the District Court asked each member of the jury whether seeing Herrman in chains had affected his or her deliberations "regarding his guilt or innocence." Each juror answered in the negative. Consequently, the court denied the motion for a mistrial, finding that, given the jurors' response, no indication of prejudice existed.

¶7     In all, twenty-four panelists were summoned in Herrman's case. In addition to Keith Montgomery, Denise Brown, Jack Byrnes, and Mindy Crain, the four panelists specifically at issue here, the remaining twenty panelists included the following: Sidney Susler, a former driver's education teacher whose son-in-law is a federal marshal; Cheryl Galt, whose son is

3

in law enforcement; Kathryn Gunderson, whose husband is an agent in charge of the local Bureau of Alcohol, Tobacco and Firearms; Cari Baxter who lives next door to a police officer; Randall Fitch, whose good friend is an agent for the FBI; Patricia Kroger, who works for the federal fleet center and who is required sometimes to investigate fatal accidents involving alcohol; and Vivian Neumann, who once took her son's driver's license away and sold his car after he violated the terms of his minor in possession probation.

¶8 During voir dire, the prosecutor established that panelist Keith Montgomery was the Yellowstone County Coroner and knew the arresting officer. The prosecutor also elicited that Montgomery had strong feelings about DUIs; that he had dealt with the DUI Enforcement Division; that he belonged to two organizations that deal with DUIs and DUI prevention (Your Choice and MADD); that he teaches high school students about DUI prevention and about the accidents and injuries that result from DUIs; that he would try to set aside his strong feelings and be a fair and impartial juror; that he, nonetheless, "didn't know" about being impartial and would have to see the facts; and that he had seen a lot of DUI fatalities over his twelve years experience as a coroner.

¶9 Montgomery indicated that he would try to leave behind his prior experiences and strong feelings. As defense counsel had done with each panelist, she inquired of Montgomery regarding the presumption of innocence and he agreed with the principle. Defense counsel did not challenge Montgomery for cause, although she later challenged him peremptorily.

4

¶10 The prosecutor also established that panelist Jack Byrnes was a former law enforcement officer in California; that he had been involved with "quite a few" DUI situations as a former member of law enforcement; that it was Byrnes' opinion "that a policeman doesn't stop someone for just no reason . . . [t]here had to be a reason for them to be stopped or an accident or something;" that the "person is not arrested for drunk driving or driving under the influence without reason;" that Byrnes would *not* promise to acquit if the State did not prove defendant's guilt beyond a reasonable doubt; and that Byrnes would *try* to be fair.

¶11 Defense counsel got Byrnes to again admit his inclination that Herrman would not be in court unless he had done something, but that he, Byrnes, would *try* to acquit if the State did not prove its case. Defense counsel did not challenge Byrnes for cause nor did she ask him any more questions; however, she did use a peremptory challenge to exclude Byrnes from the panel.

¶12 With respect to panelist Denise Brown, the prosecutor elicited that Brown's husband was a police officer; that the fact he was a police officer and that witnesses in the case were members of the police department was "probably" going to affect her ability to be fair and impartial, but that she would try and that she could follow the court's instruction. Defense counsel asked a couple of questions about whether Brown realized that police officers are human beings and make mistakes, but did not otherwise challenge Brown peremptorily or for cause, and Brown sat as one of the jurors.

5

¶13 Panelist Mindy Crain responded to the prosecutor that she believed that she could follow the law, but that she did not feel she could be impartial because her father drove a wrecker. Crain stated that she had "personally seen too many accidents from drinking and driving and what happens to people." She also noted that her father had come home and relayed stories to his family about how he had difficulties getting people out of cars from accidents in which they had been involved. Crain answered that she "could try" to be fair.

¶14 Defense counsel, again, elicited from Crain that she would have a hard time being impartial because of all the stories she had heard about car accidents from her father. Crain stated that she would *try* to make her decision based on the facts presented. Counsel did not challenge Crain for cause, instead using a peremptory challenge to strike her from the panel.

¶15 Summarizing the foregoing, although defense counsel did not challenge panel members Montgomery, Byrnes, Brown or Crain for cause, she did remove Montgomery, Byrnes, and Crain with peremptory strikes. Defense counsel then used her remaining three peremptory challenges to strike panel member Vivian Neumann, who stated that her son was caught driving drunk and that being strict was good for him; panel member Ronald Smith who knew the prosecutor and his family socially; and panel member Kathryn Gunderson, whose husband worked in federal law enforcement, unrelated to DUIs.

¶16 The jury that was finally impaneled included the following individuals discussed previously: Sidney Susler, Cheryl Galt; Cari Baxter; Randall Finch; Patricia Kroger; and Denise Brown.

Standard of Review

¶17 In considering ineffective assistance of counsel claims on direct appeal, we apply the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. In order to establish an ineffective assistance of counsel claim, a defendant must prove that: (1) the performance of defendant's counsel was deficient; and (2) counsel's deficient performance was prejudicial. *See State v. Whitlow*, 2001 MT 208, ¶ 17, 306 Mont. 339, ¶ 17, 33 P.3d 877, ¶ 17.

¶18 Claims of ineffective assistance of counsel are mixed questions of law and fact. *See State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47 (citing *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2052, 80 L.Ed.2d at 704), (stating "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact"). Therefore, our review is *de novo*. *See Turner*, ¶ 47 (citing *Iaea v. Sunn* (9th Cir. 1996), 800 F.2d 861, 864); *Langford v. Day* (9th Cir. 1996), 110 F.3d 1380, 1386; *Strickand*, 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 704).

## Discussion

## I

¶19 Did Herrman receive constitutionally effective assistance of counsel during voir dire?

¶20 Relying on *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57, Herrman alleges that his defense counsel rendered ineffective assistance of counsel at trial during voir dire. Specifically, he claims that defense counsel had a clear duty to ensure that he received a fair

trial by a panel of impartial jurors by developing information in the record demonstrating an individual juror's bias, and by exercising challenges for cause against those jurors expressing bias, pursuant to our holding in *Chastain*, 285 Mont. at 65-66, 947 P.2d at 60. He contends that four panelists expressed reservations about their ability to be impartial and should have been challenged for cause. He asserts, however, that defense counsel failed to either ask the four panelists follow-up questions concerning their expressed reservations to be impartial, or to challenge them for cause. Herrman contends that by not doing so, defense counsel was forced to use peremptory challenges on three of the four panelists, thereby leaving some individuals as jurors who would have been proper subjects for the use of peremptory challenges. He thus requests this Court to follow *Chastain* and reverse his conviction because, due to counsel's error, there was at least one juror on the jury who could not fairly assess his innocence or guilt.

¶21    In response, the State contends that the evidence against Herrman was overwhelming. Consequently, the State argues that the second prong of the *Strickland* test is not met because counsel's performance was not prejudicial in light of the overwhelming evidence of guilt. Relying on *Dawson* and *Strickland*, the State maintains we should only address the second prong of the *Strickland* test, as this matter can be resolved on that basis alone. Therefore, the State claims that it is unnecessary for us to determine whether counsel's performance was deficient during voir dire. Moreover, the State maintains that the facts presented in this case are distinguishable from those in *Chastain*.

8

¶22    It is incontrovertible that jury impartiality goes to the very integrity of our justice system, and that the right to an impartial jury is so essential to our conception of a fair trial that its violation cannot be considered harmless error. *See State v. LaMere*, 2000 MT 45, ¶ 50, 298 Mont. 358, ¶ 50, 2 P.3d 204, ¶ 50. The presence on the jury of even one juror who could not fairly assess the credibility of the witnesses must be presumed prejudicial and will result in the reversal of the conviction. *Chastain*, 285 Mont. at 65, 947 P.2d at 60.

¶23    The purpose of voir dire in a criminal proceeding is to determine the existence of a prospective juror's partiality, that is, his or her bias and prejudice. This enables counsel to intelligently exercise their peremptory challenges. *See State v. Kolberg* (1990), 241 Mont. 105, 108, 785 P.2d 702, 704; *State v. Brodniak* (1986), 221 Mont. 212, 231, 718 P.2d 322, 334-35. In a non-capital case, a defendant is entitled to six peremptory challenges in addition to challenges for cause. *See* §§ 46-16-115 and -116, MCA. Section 46-16-115, MCA, sets forth the reasons a juror may be excused for cause. In pertinent part, it states that a district court should excuse a juror for cause when he or she has a "state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. When jurors who should have been removed for cause are not removed and must, therefore, be removed by peremptory challenge, the party wrongfully denied the challenge for cause effectively loses one of the peremptory challenges to which he is entitled by law. *See State v. Good*, 2002 MT 59, ¶ 42, 309 Mont. 113, ¶ 42, 43 P.3d 948, ¶ 42.

9

¶24 In the past, this Court has ruled that when defense counsel's ineffective assistance of counsel is apparent from the record alone, reversal of the defendant's conviction is appropriate. *See Chastain*, 285 Mont. at 64-66, 947 P.2d at 59-60. Conversely, if the Court cannot make that determination from the record before it, then it must decline to proceed further and allow the defendant to raise his ineffective assistance of counsel claim in a petition for postconviction relief filed under §§ 46-21-101 through -105, MCA. *See State v. Whitlow*, 2001 MT 208, ¶ 16, 306 Mont. 339, ¶ 16, 33 P.3d 877, ¶ 16; *Hagen v. State*, 1999 MT 8, ¶ 12, 243 Mont. 233, ¶ 12, 973 P.2d 233, ¶ 12.

¶25 *Chastain* involved charges of sexual assault and sexual intercourse without consent. During voir dire examination, a prospective juror indicated that he had strong feelings about the case that were not favorable to Chastain. Defense counsel did not challenge this prospective juror for cause nor did counsel exercise a peremptory challenge to the juror. A second prospective juror indicated that she had read about the case and that had "evoke[d] some strong feelings." Counsel did not challenge this prospective juror, and she served on the jury.

¶26 Chastain appealed contending that his counsel was ineffective for not having challenged these two prospective jurors either for cause or peremptorily. The Court held that the statements of both prospective jurors demanded, at a minimum, additional inquiry. Further, the Court observed that there was nothing in the record reflecting a tactical reason for counsel not challenging either of the prospective jurors and concluded that, "[w]here, as here, defense counsel abandons his client's right to challenge a juror for no apparent reason,

error must be attributed to the lawyer." *Chastain*, 285 Mont. at 65, 947 P.2d at 60. Based on the information contained in the record, we concluded that Chastain had received ineffective assistance of counsel and reversed his conviction. We made this determination from the existing record on appeal and without the necessity of further evidence by way of a postconviction proceeding.

¶27 In *Whitlow*, Defendant was convicted of aggravated kidnaping and sexual intercourse without consent. Defendant did not raise an ineffective assistance of counsel claim in his appeal; however, he subsequently filed a petition for postconviction relief claiming that he received ineffective assistance of counsel because his counsel had failed to ask follow-up questions during voir dire. The State responded that Defendant's petition was barred because, as established in *Chastain*, Defendant should have raised his claim of ineffective assistance of counsel on direct appeal. Defendant countered that, unlike *Chastain*, his claims for ineffective assistance of counsel required the development of facts outside the trial record; therefore, he could not have brought his claim on direct appeal. Ultimately, we agreed with the Defendant and in so doing, distinguished Whitlow's claim for ineffective assistance of counsel from the claim in *Chastain*. We noted that, unlike defense counsel's failure to ask follow-up inquiries in *Chastain,* which could not be reasonably explained, Whitlow's defense counsel's decision not to further question prospective jurors may have been part of his trial strategy, and therefore, was capable of a satisfactory explanation. We concluded that Whitlow would have to go beyond the trial record in order to prove his ineffective assistance of counsel claim. *See Whitlow*, ¶ 21.

11

¶28     After reviewing our decisions in *Chastain* and *Whitlow*, we conclude that, in *Chastain*, it was a mistake for the Court, based on the lack of a reason "apparent" on the record, to determine that counsel was ineffective in voir dire examination. Although lawyers will, on the record, state their reasons for challenging a juror for cause, they do not state their reasons for *not challenging* a juror. A lawyer's rationale for not challenging a juror for cause is strictly a matter of internal thought processes or, perhaps, the subject of an off-the-record discussion between the lawyer and his client. There can be any number of reasons, not apparent from the record, why a lawyer will choose to not challenge a juror. As we noted in *Whitlow*: "Trial counsel could have known other facts about these prospective jurors which led counsel to reasonably believe that, despite their possible prejudices, placing these jurors on the panel would be favorable to his client." *Whitlow*, ¶ 21.

¶29     In preparing for a trial, lawyers often review the list of prospective jurors with other lawyers or residents of the forum city to get a feel for the named individuals in terms of their attitudes, predilections and beliefs. Some lawyers will have the juror questionnaires analyzed by a hand writing analyst to obtain a psychological profile. The results of such inquiries and analyses are all outside the record and yet they factor into the lawyer's decision as to whether to challenge a juror. A prospective juror, responding to an inquiry during voir dire, may express a certain unfavorable bias or disclose a kinship to law enforcement, for example. The lawyer, nonetheless, in the exercise of his or her professional judgment, may determine that the ostensibly jaundiced response is outweighed by some more favorable off-the-record information that he or she has about that individual. Perhaps the lawyer conferred

12

with his client and advised challenging the juror but the client said "no, I like the person's body language, I want him on my jury."

¶30    No doubt there are other examples of the behind the scenes machinations of counsel and client during the jury selection process.  The point is that it is a mistake to assume that we can determine from a cold record whether there was a tactical reason for not exercising a challenge.  The reasons for counsel's actions or inactions should not be "assumed" but should be the subject of a postconviction evidentiary inquiry.

¶31    The instant case presents another consideration not present in *Chastain*. That is, Herrman's counsel, after declining to challenge the four jurors in question for cause, did use peremptory challenges against three of these prospective jurors.  This of course gives rise to the argument that his counsel could have saved three peremptory challenges by astutely exercising challenges for cause.  Herrman argues that there is no tactic that would justify defense counsel removing a potential juror peremptorily where that same person likely could have been successfully challenged "for cause."  This contention does not withstand scrutiny. It ignores the fact that peremptory challenges involve a very different dynamic than challenges for cause.  Challenges for cause are exercised first, they are unlimited and there is no real advantage to the timing of the challenge.  As we recognized in *State v. Russell*, 2001 MT 278, ¶ 19, 307 Mont. 322, ¶ 19, 37 P.3d 678, ¶ 19, peremptory challenges are essentially a matter of trial strategy.  Peremptory challenges are exercised after the jury panel has been passed "for cause;" they are limited to six per side in a non-capital case, § 46-16-116, MCA,  and they are exercised on a rotation basis: the State first, then the defendant,

then the State, and so on. When counsel is exercising peremptory challenges, he or she is engaging in a chess game with opposing counsel. In exercising each challenge, he or she must keep an eye on the end result. That is, which twelve individuals are going to end up constituting the jury. This entails considerable prioritizing. Counsel must keep one eye on who is eliminated by virtue of his or her challenge and the other eye on the composition of the remaining twelve jurors. Counsel also has to second guess which juror will be challenged by the State in its next move. Thus, the reasons for exercising a peremptory challenge need not be the same reasons that would have prompted a challenge for cause. For example, counsel's peremptory challenge to 65-year-old juror Andy may not be based on Andy's answers to voir dire questions (which may have given rise to a challenge for cause), but rather on the fact that counsel would prefer to have a jury composed of young men rather than older men and, in eliminating Andy from the list, 28-year-old Bruce will be moved into the top twelve who will make up the final jury.

¶32 Again, without the benefit of a postconviction hearing, we cannot conclude that there is no strategic plan or tactic that would justify defense counsel removing a potential juror peremptorily where that same person likely could have been successfully challenged for cause.

¶33 For the above-stated reasons, we overrule *Chastain's* holding that a claim of ineffective assistance of counsel for failure to challenge prospective jurors in voir dire can be determined from a record which is silent as to the lawyer's reasoning. In *State v. St. John*, 2001 MT 1, 304 Mont. 47, 15 P.3d 970 (overruled on other grounds by *State v. Brister*, 2002

14

MT 13, 308 Mont. 154, 41 P.3d 314), the record was silent as to why St. John's counsel failed to act in the challenged manner. We held: "When the record does not provide the basis for the challenged acts or omissions of counsel, a defendant claiming ineffective assistance of counsel more appropriately makes his claims in a petition for postconviction relief." *St. John*, ¶ 40; *see also State v. Black* (1995), 270 Mont. 329, 338, 891 P.2d 1162, 1167-68; *State v. Courchene* (1992), 256 Mont. 381, 389, 847 P.2d 271, 276; *State v. Black* (1990), 245 Mont. 39, 43, 798 P.2d 530, 532-33. As we did in *St. John* and *Whitlow*, we conclude that Herrman's claims for ineffective assistance of counsel cannot be addressed without considering matters outside the record. That is, without considering *why* counsel did not challenge the jurors for cause.

¶34 We cannot address Herrman's ineffective assistance of counsel claims without considering matters outside the record. His contentions regarding the ineffective assistance of counsel would be more appropriately raised in a petition for postconviction relief. Therefore, we dismiss Herrman's claim of ineffective assistance of counsel.

<u>II</u>

¶35 Did the District Court abuse its discretion in denying Herrman's motions for mistrial?

¶36 A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Soraich,* 1999 MT 87, ¶ 17, 294 Mont. 175, ¶ 17, 979 P.2d 206, ¶ 17. This Court's standard of review of a grant or denial of a motion for mistrial is whether the court abused its discretion. *See*

15

*Harding v. Deiss*, 2000 MT 169, ¶ 19, 300 Mont. 312, ¶ 19, 3 P.3d 1286, ¶ 19; *Soraich,* ¶ 17.

¶37 Herrman argues that the District Court erred in denying his motion for mistrial because the jury's ability to be impartial was affected when jurors observed him being escorted into the courtroom in belly chains and handcuffs. He contends that the jury panel included several people who expressed bias in favor of law enforcement. Herrman maintains that when the jurors observed him in shackles their ability to be impartial was significantly impaired and therefore, his constitutional right to an impartial jury was violated. Herrman, however, ties this second issue to the first and contends that, "even though this issue [shackling] might be regarded as insufficient in and of itself to require a reversal, it should be so regarded when combined with issue number I." Since we have determined that issue number one (ineffective assistance of counsel during jury selection) cannot be addressed based upon the record before us, we decline to address issue number two as framed by Herrman.

¶38 Nevertheless, this Court would be remiss in not expressing alarm that a defendant, charged with a nonviolent offense, was brought into a courtroom in belly chains and handcuffs. The court record does not reveal why Herrman was restrained. However, we believe it is better for a trial court to establish an essential state interest for the shackling *before* the defendant is brought into the courtroom in shackles. *See Rhoden v. Rowland* (9th Cir. 1999), 172 F.3d 633. In some situations, "sufficient cause for this level of security [may] be found in the State's need to maintain custody over defendants who had been denied

16

bail after an individualized determination that their presence at trial could not otherwise be ensured." *Holbrook v. Flynn* (1986), 475 U.S. 560, 571, 106 S.Ct.1340, 1347, 89 L.Ed.2d 525, 536. When a defendant or his or her crime is particularly violent, the court may require him or her to be restrained in some fashion; however, even then, the court should make every reasonable effort to assure that the restraints are not visible to the jury.

¶39 In conclusion, we dismiss Herrman's claim of ineffective assistance of counsel and overrule *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57, to the extent that it is inconsistent with this opinion. We decline to address whether the District Court abused its discretion in denying Herrman's motion for a mistrial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JIM RICE

17

Chief Justice Karla M. Gray specially concurring.

¶40     I agree entirely with the Court's analysis and opinion on the dispositive issue in this case, and join the Court in overruling *Chastain* and dismissing the ineffective assistance of counsel claim on direct appeal.  I also agree entirely with the Court's decision not to address the second issue, which is whether the District Court abused its discretion in denying Herrman's motion for a mistrial based on the jury having seen him in shackles.  Unlike the Court, however, I would end the opinion at that point.

¶41     Instead, having declined to address the mistrial issue, the Court then proceeds in ¶ 38 to "express alarm" and, in essence, establish a standard and procedure under which a criminal  defendant properly could be brought into a courtroom in shackles.  This language is dicta pure and simple, since the Court has already declined to address the issue substantively.  Much of the practicing bench and bar, of course, will take this language as gospel.  Others may desire to raise a similar issue, and argue a different outcome, in a future case in which the Court would actually discuss and analyze the issue; they will inevitably feel somewhat constrained not to do so, given the  Court's inclusion of ¶ 38 in its opinion here.

¶42     The problem with dicta is that it traps everyone.  It isn't really the law, but does the Court mean for it to be followed?  If the non-law isn't followed by a district court, will this Court reverse?  If there is existing authority to the contrary, may a prosecutor raise and argue it in a future case without incurring this Court's displeasure?

¶43     I would wait for this matter to be raised and briefed in a precedential case in which the Court analyzes and resolves the issue.  There being sufficient lack of clarity in the law at the best of times, I would avoid adding more lack of clarity gratuitously.


                                        /S/ KARLA M. GRAY