No. 01-529

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 230

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

KENNETH PATRICK VUKASIN, JR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and for the County of Cascade, Cause No. CDC-00-015,
                   Honorable Kenneth R. Neill, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            Kristina Guest, Assistant Appellate Defender, Helena, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Tammy Plubell,
            Assistant Attorney General, Helena, Montana

            Brant Light, County Attorney, Great Falls, Montana

                             Submitted on Briefs:  March 28, 2002

                                     Decided:  August 28, 2003

Filed:

            _____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Kenneth Vukasin (Vukasin) appeals from the jury verdict and judgment entered by the Eighth Judicial District Court, Cascade County, finding Vukasin guilty of two counts of felony assault, one count of disorderly conduct, one count of criminal mischief, and one count of partner or family member assault. We affirm.

¶2 The following issues are presented on appeal:

¶3 1. Whether the District Court abused its discretion in denying Vukasin's motion for a directed verdict on the charge of partner or family member assault.

¶4 2. Whether the District Court abused its discretion in admitting evidence of Vukasin's prior conduct after granting Vukasin's motion in limine.

¶5 3. Whether Vukasin received ineffective assistance of counsel during voir dire.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 On January 3, 2000, Vukasin went to a bar to drink and play pool with a friend. For about a month, Vukasin had been residing in an apartment with his girlfriend, Angela Zigan (Zigan), who was in the apartment when Vukasin returned during the evening to get some money. Zigan, who had known Vukasin for about eight years and had a child with him, discerned that Vukasin had been drinking. Vukasin then returned to the bar. Zigan later went to the bar, requested that Vukasin not come home because he had been drinking, and asked for Vukasin's key to the apartment. Vukasin refused to give her the key, and Zigan returned to the apartment.

2

¶7    At approximately 10 p.m., Zigan observed Vukasin drive up to the apartment building. Seeking to avoid a confrontation with Vukasin which she anticipated from his past behavior, Zigan took her dog and left the apartment, entering her neighbor's apartment across the hallway. Zigan testified during trial that, based on her experience, Vukasin's attitude changes when he drinks and he has become violent when drinking.

¶8    Vukasin first entered the apartment he shared with Zigan, and then came out and knocked on the neighbor's apartment door across the hall. Realizing it was Vukasin, Zigan locked herself in the bathroom of her neighbor's apartment. When the neighbor opened the door, Vukasin asked where Zigan was, and the neighbor informed him that she was in the bathroom. Vukasin then told the neighbor to unlock the bathroom door, but the neighbor said the door could not be unlocked. He then told the neighbor to tell Zigan to get back to their apartment or he was going to trash it. Vukasin then left the neighbor's apartment. Zigan listened to this conversation through the bathroom door and related at trial that Vukasin's "whole attitude caused me concern."

¶9    Returning to Zigan's apartment, Vukasin began breaking things and yelling. Zigan testified that "you could hear the glass being broken. It was just loud. There was a lot of noise. He was screaming." She then heard Vukasin yell, "get your ass over here you fucking whore. I'm going to kill you." Zigan stayed in the neighbor's apartment and called 911, reporting that Vukasin was "trashing" her apartment. Zigan had three conversations with the dispatcher while police officers were responding to the scene.

3

¶10 Upon arrival, the officers heard loud yelling and banging and, after entering the building, discovered the noise was coming from Zigan and Vukasin's apartment. The officers positioned themselves at the apartment door and readied pepper spray. Officer Badgley then loudly identified their presence as Officer Pinski knocked on the door.

[Prosecutor] Q: Did you receive any response from inside?

[Pinski] A: A knife coming through the door.

. . . .

A: . . . I knocked on the door. And the response, I heard a thud coming against the door. I hadn't looked over at the door, and I believe that the male individual inside was throwing something at the door until I turned and looked at the door and saw . . . four to five inches of a knife blade sticking out of the door.

. . . .

Q: Okay. About how many times did it come through the door?

A: I wasn't sure at the time. But we counted ten holes in the door after we had backed out of it.

Q: And did they happen slowly or about what pace were they coming through?

A: The knife was not getting stuck in the door. It was . . . one after another. I don't know the speed or the rate or anything. But it wasn't like the knife got stuck and then he had to pull it out.

. . . .

Q: Now, what was your reaction to the knife coming through?

A: At that point I put my pepper spray away and took out my firearm. Officer Badgley did the same. And we retreated out of the hallway.

4

¶11 In her neighbor's apartment, Zigan overheard police attempting to communicate with Vukasin, and she opened the door of her neighbor's apartment. As she did so, she saw one of the officers jump back, and also observed the knife holes in her apartment's door. The officers instructed Zigan to go back into her neighbor's apartment. She and the neighbor exited the apartment through a back door, eventually meeting up with police outside the building. Concerned about officer safety, police elected not to immediately arrest Vukasin. Instead, they evacuated the apartment building and arrested Vukasin without incident the next morning, at which time they seized evidence from the apartment.

¶12 Vukasin was charged with two counts of felony assault, in violation of § 45-5-213, MCA; one count of misdemeanor assault, in violation of § 45-5-201, MCA; one count of disorderly conduct, in violation of § 45-8-101, MCA; one count of criminal mischief, in violation of § 45-6-101, MCA; one count of partner or family member assault, in violation of § 45-5-206, MCA; and one count of criminal possession of drug paraphernalia, in violation of § 45-10-103, MCA.

¶13 Prior to trial, Vukasin pled guilty to the drug paraphernalia charge, and the State dismissed the count of misdemeanor assault. On the day of trial, Vukasin filed a motion in limine requesting that no comment or statement be made about any crime, wrong, or act pursuant to Rule 404(b), M.R.Evid., other than those related to the charges against Vukasin in this matter. The State did not object to the motion in limine, and the District Court granted the motion.

5

¶14     At the conclusion of the State's case, Vukasin moved for a directed verdict on the two counts of felony assault and the count of partner or family member assault, which was denied by the District Court. After deliberations, the jury found Vukasin guilty of two counts of felony assault, one count of disorderly conduct, one count of criminal mischief, and one count of partner or family member assault. On April 25, 2001, the District Court sentenced Vukasin to ten years in prison for each of the felony assault convictions and imposed a term ranging from ten days to six months on the misdemeanor offenses, with the sentences to run concurrently. Vukasin appeals.

## DISCUSSION

¶15     **Did the District Court properly exercise its discretion when it denied Vukasin's motion for a directed verdict on the charge of partner or family member assault?**

¶16     This Court reviews a denial of a motion for a directed verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Landis*, 2002 MT 45, ¶ 23, 308 Mont. 354, ¶ 23, 43 P.3d 298, ¶ 23. The decision is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Landis*, ¶ 23.

¶17     Vukasin challenges the District Court's denial of his motion for directed verdict on the charge of partner or family member assault. At the close of the State's case-in-chief, Vukasin moved for a directed verdict, contending that no evidence had been presented

6

establishing that Zigan had sustained reasonable apprehension of bodily injury. Section 46-16-403, MCA, provides:

> When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

The State's charge of partner or family member assault did not allege that Vukasin had actually assaulted Zigan, but had caused her apprehension of injury in violation of § 45-5-206(1)(c), MCA, which provides:

> (1) A person commits the offense of partner or family member assault if the person:
> . . .
> (c) purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member.

Thus, in order to meet its burden, the State had to prove beyond a reasonable doubt that Vukasin purposely or knowingly caused reasonable apprehension of bodily injury to Zigan, who was by definition a partner pursuant to § 45-5-206(2)(b), MCA.

¶18 Vukasin argues that no rational trier of fact could have found beyond a reasonable doubt that Vukasin purposely or knowingly caused Zigan reasonable apprehension of bodily injury. He notes that Zigan repeatedly testified that Vukasin did not hurt her, and that she had not even spoken directly with him during the incident. Vukasin also points out that Zigan did not testify that his statement, "I'm going to kill you," had caused Zigan reasonable apprehension of bodily injury. He further notes that, during her three calls to 911, Zigan neither stated that Vukasin had hit her nor specifically indicated that she was fearful.

7

¶19 The standard for determining whether a person has "reasonably apprehended bodily injury is that of a reasonable person under similar circumstances." *State v. McCarthy*, 1999 MT 99, ¶ 27, 294 Mont. 270, ¶ 27, 980 P.2d 629, ¶ 27; *see also State v. Martel* (1995), 273 Mont. 143, 150, 902 P.2d 14, 19 ("When faced with the conduct complained of, would a reasonable person feel apprehension . . . ? A reasonable person standard is an objective one.").

¶20 Further, direct evidence is not necessary to establish the elements of a criminal offense. A criminal conviction may be based entirely on circumstantial evidence. *State v. Hall*, 1999 MT 297, ¶ 22, 297 Mont. 111, ¶ 22, 991 P.2d 929, ¶ 22. Section 26-1-102(1), MCA, defines circumstantial evidence as "that which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." Thus, the direct proof of other facts may give rise to an inference that the victim sustained reasonable apprehension of bodily injury.

¶21 The State presented evidence that Vukasin had been drinking that night and that his attitude and behavior changed when he did so. The evidence further established that Zigan asked Vukasin not to return to the apartment because of his drinking, but that Vukasin refused to honor that request and refused to turn over his apartment key to her. When Vukasin returned to their apartment, Zigan, concerned because of Vukasin's past behavior, removed herself and her dog from the apartment, and locked herself in the neighbor's bathroom when Vukasin came searching for her. Vukasin then went into a rage, threatening to "trash" Zigan's apartment if Zigan did not "get back" to the apartment, destroying

8

property, yelling loudly and threatening to kill Zigan. Zigan placed not one, but three, calls to 911, and continued to take refuge in her neighbor's apartment until police arrived, even though Vukasin was destroying her property. As officers attempted to communicate with Vukasin, she opened the door to her neighbor's apartment, only to see an officer jumping back. She observed knife holes in her apartment door and was instructed to go back into her neighbor's apartment by the officers. She and the neighbor retreated out the back door of the apartment and, on police instruction, left the premises for the night.

¶22 The State contends that from the direct proof of these facts, a rational trier of fact could have found the essential elements of the crime, including reasonable apprehension of bodily injury. We agree. Fleeing from her apartment with her dog over concern about Vukasin's past violent behavior, locking herself in a neighbor's bathroom, hearing Vukasin scream that he was going to kill her, observing knife holes Vukasin was making in her apartment door, and ultimately fleeing the building are facts from which, when viewed in a light most favorable to the prosecution, a jury could find, beyond a reasonable doubt, that Zigan has sustained reasonable apprehension of bodily injury caused by Vukasin. Thus, we hold the District Court did not abuse its discretion in denying Vukasin's motion for a directed verdict on the charge of partner or family member assault.

¶23 **Did the District Court err in admitting evidence of Vukasin's prior conduct after granting Vukasin's motion in limine?**

¶24 Vukasin claims that the prosecution improperly introduced "prior bad act" evidence which prejudiced Vukasin and prevented him from receiving a fair trial. Prior to trial,

9

Vukasin filed a motion in limine to exclude all evidence of prior crimes or prior "bad act" evidence pursuant to Rule 404(b), M.R.Evid., and to exclude all hearsay testimony. Vukasin's motion in limine requested, in relevant part:

> 1. That there shall be no reference, comment, allusion or statement made to any crime, wrong or act pursuant to M.R.Evid. Rule 404(b) other than those related to the charges against the Defendant at trial. This restriction shall include, but is not limited to reference to the Defendant's probationary status and any offenses to which the Defendant may choose to plead guilty to or are dismissed prior to trial; and
>
> 2. That no hearsay testimony regarding any of the offenses charged shall be allowed into evidence pursuant to M.R.Evid. Rule 802, except as otherwise provided by law[.]

The State did not object to the motion, and it was granted by the District Court.

¶25 Vukasin claims the following exchange between Zigan and the prosecutor violated his motion in limine:

> [Prosecutor] Q: What happened when he came back?
>
> [Zigan] A: I was at my neighbor's house. I seen him pull up and I left my apartment and went to my neighbor's house.
>
> Q: How did you get to your neighbor's house?
>
> A: I walked across the hall.
>
> Q: Why did you go over there?
>
> A: Because I wasn't going to be confronted.
>
> Q: What was causing you that type of thought?
>
> A: Because he's been violent in the past.

10

Likewise, Vukasin asserts the following question and answer between the prosecutor and Officer Pinski violated the motion:

> Q: Okay. And she reported what essentially?
>
> A: She reported that Mr. Vukasin had come to her apartment that night and was intoxicated, had started to argue with her. She indicated to me that there was a history of abuse, that he'd hit her before, and that she was afraid of what was going to happen tonight. So she had run from apartment number three into apartment number four.

¶26 Vukasin argues that this testimony constitutes "prior bad act" evidence which is inadmissible under Rule 404(b), M.R.Evid., and was admitted in violation of the pre-trial order. He asserts that the evidence was "completely irrelevant" to the charges against him, and allowed the jury to focus on his character instead of his conduct, thereby prejudicing him.

¶27 At the time the testimony was offered, Vukasin offered no objection to its admission. The State notes this omission and argues that Vukasin's motion in limine was insufficient to preserve the issue on appeal. Relying on *State v. Weeks* (1995), 270 Mont. 63, 891 P.2d 477, the State, while conceding that a motion in limine may preserve a specification of error for appeal, argues that the mere act of filing a motion in limine does not negate the obligation to make the basis and grounds of the objection clear to the trial court in order to preserve the issue for appeal, and that Vukasin's motion was not specific enough to do so. In *Weeks*, we held that Week's motion in limine was insufficient to preserve his objection because he failed to specify "any reasons or authority" regarding why the evidence should be excluded, but rather made "sweeping conclusory statements"about the prejudicial effect of the

11

evidence. We noted that "specific objections must be made to portions of testimony deemed inappropriate; broad general objections do not suffice." *Weeks,* 270 Mont. at 85, 891 P.2d at 490. The State argues that if the testimony of Zigan and Officer Pinski, quoted herein, was the testimony Vukasin intended to exclude by the motion in limine, then he had a duty to specify the expected testimony in the motion, and his failure to do so waived any objection.

¶28 Vukasin replies that his motion in limine is distinguishable from the insufficient motion in *Weeks*. He argues that, unlike the generic, conclusory motion in *Weeks*, his motion cited the "well-founded evidentiary rule" of Rule 404(b), M.R.Evid., and that his motion preserved the issue for appeal in a manner consistent with this Court's holdings in a series of cases beginning with *State v. Brown* (1984), 209 Mont. 502, 680 P.2d 582, and followed by *State v. Stuit* (1996), 277 Mont. 227, 921 P.2d 866, *State v. Fuhrmann* (1996), 278 Mont. 396, 925 P.2d 1162, and *State v. Ingraham*, 1998 MT 156, 290 Mont. 18, 966 P.2d 103. A proper analysis of these cases reveals that Vukasin's argument is incorrect.

¶29 The first principle here is that "we will not put a trial court in error where that court has not been given the opportunity to rule on the admissibility of evidence and to correct itself." *Stuit*, 277 Mont. at 230, 921 P.2d at 868, citing *State v. McCord* (1992), 251 Mont. 317, 325, 825 P.2d 194, 200; *see also Brown*, 209 Mont. at 506, 680 P.2d at 584; *Weeks*, 270 Mont. at 85, 891 P.2d at 490. Consistent therewith, we have repeatedly approved the use of a motion in limine to preserve an objection for appeal "provided the objecting party makes the basis for his objection clear to the district court." *Fuhrmann*, 278 Mont. at 403, 925 P.2d

12

at 1166; *see also Weeks*, 270 Mont. at 85, 891 P.2d at 490; *Ingraham*, ¶ 36. In *Stuit*, we held that the motion in limine must be "sufficiently specific as to the basis for the objection." *Stuit*, 277 Mont. at 230, 921 P.2d at 868.

¶30    In *Brown*, the defendant filed a pre-trial motion objecting to the admission of evidence of his prior wrongful conduct. The district court did not directly rule on the motion, but ordered the state to provide notice ten days before trial if it intended to introduce evidence of defendant's prior acts, which the state failed to do before introducing the evidence. On appeal, we found that defendant had been prejudiced by the state's violation of the order, because, had defendant received the required notice, "he would have had the opportunity, prior to trial, to evaluate and to move to exclude that portion of such evidence that should not have been admitted." *Brown*, 209 Mont. at 507, 680 P.2d at 585. We found that, in light of the state's failure to notify him, Brown had done what he could to raise the issue in the district court, and concluded the issue had been preserved for appeal. Thus, the issue was preserved by virtue of the state's violation of the trial court's order, which had deprived the defendant of an appropriate opportunity to make a proper objection.

¶31    In *Stuit*, the defendant filed a motion in limine "requesting that at trial the State be precluded from eliciting testimony from the officer which was anticipated to identify Stuit as the shooter based upon statements made to the officer by others." *Stuit*, 277 Mont. at 229, 921 P.2d at 868. Upon assurance by the state that the third party declarant would testify first, the district court refused to grant the motion. On appeal, we rejected the state's argument that Stuit had waived the issue by failing to object at trial, concluding that Stuit's

13

motion in limine was sufficiently specific to preserve the issue for appeal. *Stuit*, 277 Mont. at 230, 921 P.2d at 868.

¶32    In *Fuhrmann*, the defendant sought to exclude comments made by the alleged victim "to the effect that Fuhrmann's actions were on purpose or not an accident." *Fuhrmann*, 278 Mont. at 401, 925 P.2d at 1165. The district court denied Fuhrmann's motion, and further, "relieved him of any obligation to object again at trial" to the state's introduction of the challenged evidence. *Fuhrmann*, 278 Mont. at 403, 925 P.2d at 1167. We concluded that Fuhrmann's pre-trial request to exclude specific comments made by a specific witness had properly preserved his objection for appeal.

¶33    Lastly, in *Ingraham*, the defendant, prior to trial, "specifically moved to exclude testimony regarding the presence of lithium, librium, and other chemicals detected in his blood, as well as bottles of prescription medication found in his car." *Ingraham*, ¶ 29. The state argued in the district court that the "critical fact" was whether Ingraham had drugs in his system at the time of the accident, and that it was entitled to establish Ingraham's use of various drugs. The district court denied Ingraham's motion in limine, and Ingraham did not object to an officer's trial testimony that he had retrieved two bottles of prescription medication from the car. On appeal, we concluded that Ingraham's objection had been preserved by his pre-trial motion, noting that the motion had also requested that the state be precluded from "mentioning that medications were found in the defendant's car." *Ingraham*, ¶ 35.

¶34    In each of these cases, the pre-trial motion in limine was denied by the district court.[1] Thus, in each case, the district court was directly faced with the question and ruled against the defendant, thereby preserving for appeal any evidentiary issue that was specifically addressed in the motion.  That is not the situation here.

¶35    The District Court granted Vukasin's motion in limine.  However, unlike the objections made in *Stuit*, *Fuhrmann* and *Ingraham*, Vukasin's motion did not identify either the specific witness or the specific testimony to which he now objects on appeal.  Instead, Vukasin generally objected to any "reference, comment, allusion or statement made to any crime, wrong or act pursuant to M.R.Evid. Rule 404(b)."  Thus, even though the District Court granted the motion, it was not alerted by the motion that Vukasin was objecting to testimony about his past violent behavior which had prompted Zigan to flee from her apartment.  Neither was the motion's objection to the admission of any "hearsay testimony . . . pursuant to M.R.Evid. Rule 802," which Vukasin mentions only fleetingly in his appellate briefing, specific enough to alert the trial judge to the testimony he was challenging.  The only specific objection raised within Vukasin's motion was to any "reference to the Defendant's probationary status and any offenses to which Defendant may choose to plead guilty to or are dismissed prior to trial," but such evidence was not introduced at trial, and is not at issue here.

---

[1]In *Brown*, the district court did not grant defendant's motion on limine, electing instead to impose a notice requirement upon the state for purposes of raising the evidentiary issue again before trial, which the state violated.

¶36     Further, Vukasin's motion went so far as to infer that he had no objection to the evidence he now challenges on appeal. His motion requested that evidence of his other crimes or acts be excluded "other than those related to the charges against the Defendant at trial." It could very well have been surmised therefrom that evidence of Zigan's motivation to flee the apartment was indeed "related to the charges against the Defendant at trial," and therefore outside the scope of Vukasin's motion.

¶37     Aside from this inference, however, it is clear that Vukasin's generalized motion in limine and his failure to object to the testimony during trial failed to provide the District Court with "the opportunity to rule on the admissibility of evidence and to correct itself." *Stuit*, 277 Mont. at 230, 921 P.2d at 868. The District Court was simply not directed to this specific issue. Far from being able to correct itself, the trial court may not have even known that the issue existed.

¶38     "[S]pecific objections must be made to portions of testimony deemed inappropriate; broad general objections do not suffice." *Weeks*, 270 Mont. at 85, 891 P.2d at 490. Vukasin's motion in limine was a generalized objection which did not preserve the evidentiary issue on appeal. Therefore, we conclude that the issue was waived.

¶39     **Did Vukasin receive ineffective assistance of counsel during voir dire?**

¶40     Vukasin claims his counsel rendered ineffective assistance during voir dire by failing to ask follow-up questions of Panelist Figgins about a possible bias and by allowing Figgins to serve on the jury. The State argues that Vukasin's ineffective assistance of counsel claim is not record based, and therefore, we cannot reach the issue.

16

¶41   Vukasin contends that the record adequately supports his claim for ineffective assistance, and that his counsel's errors are similar to those which occurred in *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57. In *Chastain*, we considered defense counsel's failure to challenge for cause or to exercise a peremptory challenge to a juror who had indicated strong feelings unfavorable to Chastain. Reviewing the record on Chastain's appeal from his conviction, this Court concluded, "where as here, defense counsel abandons his client's right to challenge a juror for no apparent reason, error must be attributed to the lawyer." *Chastain*, 285 Mont. at 65, 947 P.2d at 60.

¶42   In two recent cases, *State v. Herrman,* 2003 MT 149, 316 Mont. 198, 70 P.3d 738, and *State v. Turnsplenty*, 2003 MT 159, 316 Mont. 275, 70 P.3d 1234, we discussed our holding in *Chastain*, and determined that "in *Chastain*, it was a mistake for the Court, based on the lack of a reason 'apparent' on the record, to determine that counsel was ineffective in voir dire examination." *Herrman*, ¶ 28; *Turnsplenty*, ¶ 16. Both cases involved a defense counsel's failure during voir dire to ask follow-up questions to panelists who had expressed reservations about being impartial, or to challenge them for cause. In considering defense counsel's failure to challenge a panelist for cause, we held:

> [I]t is a mistake to assume that we can determine from a cold record whether there was a tactical reason for not exercising a challenge. The reasons for counsel's actions or inactions should not be "assumed" but should be the subject of a postconviction evidentiary inquiry.
>
> . . . .
>
> For the above-stated reasons, we overrule *Chastain's* holding that a claim of ineffective assistance of counsel for failure to challenge prospective

17

jurors in voir dire can be determined from a record which is silent as to the lawyer's reasoning.

*Herrman*, ¶¶ 30, 33. We further concluded that none of the appellant's claims regarding his counsel's actions during voir dire could be addressed without considering matters outside the record, and were therefore inappropriate for direct appeal, quoting *State v. St. John*, 2001 MT 1, 304 Mont. 47, 15 P.3d 970 (overruled on other grounds by *State v. Brister*, 2002 MT 13, 308 Mont. 154, 41 P.3d 314):

> "When the record does not provide the basis for the challenged acts or omissions of counsel, a defendant claiming ineffective assistance of counsel more appropriately makes his claim in a petition for postconviction relief." *St. John*, ¶ 40 . . . .

*Herrman*, ¶ 33.

¶43 The failure of counsel to ask follow-up questions of Figgins about a possible bias and allowing Figgins to serve on the jury are similar to the voir dire errors claimed in both *Herrman* and *Turnsplenty*. Likewise, the inadequacy of the record here requires us to reach the same conclusion as we did in those cases. We cannot address Vukasin's claim because the record does not reveal whether counsel's inaction was a reasonable tactical decision or a mistake. Because the record is void of any evidence as to *why* defense counsel did not take such actions, Vukasin has improperly raised his ineffective assistance of counsel claim on direct appeal.

¶44 We hold Vukasin's allegations of ineffective assistance of counsel are not record based, and therefore, we dismiss Vukasin's claim of ineffective assistance of counsel without prejudice to his pursuit of the claim in postconviction proceedings.

¶45　　The judgment of the District Court is affirmed.


                                    /S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON